**UNITED STATES of America, Appellee,**

v.

**Charles R. KNOWLES, Appellant.**

**No. 78–2335.**

United States Court of Appeals,
Ninth Circuit.

April 2, 1979.

Before SNEED and ANDERSON, Circuit Judges, and WILLIAMS, District Judge.*

DAVID W. WILLIAMS, District Judge.

Appellant Charles R. Knowles was convicted by a jury of five counts of violation of 18 U.S.C. § 2314, transportation in interstate commerce of securities knowing the same to have been stolen, taken, or converted by fraud. The first count charges that Knowles induced James Knight to assign the proceeds of three real estate contracts to him by showing Knight a counterfeit cashier's check in the amount of $52,000. The remaining counts charge interstate transportation of the forged check and interstate transportation of the three assignments knowing the same to have been taken by fraud.

During the trial, appellant attempted to obtain grand jury transcripts of the government's key witness pursuant to 18 U.S.C. § 3500 (Jencks Act). The transcripts did not arrive until after the verdict, but they disclosed that the witness had previously lied under oath to a grand jury, and several other impeachable inconsistencies with his testimony below. Knowles claims that failure to produce the transcript violated his Sixth Amendment right to compulsory process and his Fifth Amendment right to a fair trial. Knowles had been convicted several months previously of a similar crime in Colorado and now claims that the prosecution made such extensive use of evidence of this at trial that the jury was prejudiced.

The facts are complicated. Ven Savage assigned his interest in the proceeds from four real estate contracts in Montana to James Knight in exchange for cash. Savage also gave Knight a promissory note for $50,000 payable in one year. Proceeds of

Robert L. Zimmerman, Asst. U.S. Atty. (argued), Billings, Mont., for appellant.

Judith E. Bendich (argued), Bendich, Stobaugh & Strong, Seattle, Wash., for appellee.

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

the assignments were insufficient to pay the loan. At the end of the year Knight demanded payment on the note, but Savage could not pay. Knowles agreed to pay the note on Savage's behalf in exchange for three of the assignments. The government charges that Knowles's promise to pay was fraudulent and that he induced Knight to sign over the assignments by displaying to Knight a counterfeit cashier's check in the amount of $52,000. The government contends that Knowles took Knight from Utah to Montana where the assignments were executed and that the assignments were returned by mail from Montana to Utah.

Knight testified that Knowles had shown him a cashier's check for $52,000 drawn on Zion First National Bank of Utah. The government contended that no such check had ever been issued by the bank to Knowles. Knowles contended that what he showed Knight was a regular business check rather than a cashier's check. Savage saw the incident but was not sure what type of check was shown. Leland Facer testified that Knowles had told him of using phony checks to defraud Knight and this was corroborated by Donald Bradley. Bradley also recalled the events of Knowles's recent conviction involving fraudulent checks in Colorado. He claimed that Knowles gave him several such forged cashier's checks and that they agreed to divide the proceeds. Facer and Bradley were impeached to the extent of their prior convictions, and Knowles disputed Bradley's testimony.

■ Defense counsel made timely request for Jencks Act material regarding Facer. The Jencks Act requires that the government produce any "statement" in its possession of a witness it has called which relates to the subject matter of which the witness has testified. This would include a transcript of a witness's testimony before a grand jury. Failure to comply with the Jencks Act does not per se require a new trial. However, such failure calls for close scrutiny. "(T)he Harmless Error doctrine must be strictly applied in Jencks Act cases." *Goldberg v. U. S.*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1967). *See* also *U. S. v. Beasley*, 576 F.2d 626 (5th Cir. 1978).

■ A clearly legitimate purpose exists for disclosure under the Jencks Act. "The command of the statute is thus designed to further the fair and just administration of criminal justice, a goal of which the judiciary is the special guardian." *Campbell v. U. S.*, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428 (1961). The Act makes any existing prior statement of a government witness concerning matters covered by direct examination equally available to the defense and the prosecution. *See U. S. v. Snow*, 537 F.2d 1166 (4th Cir. 1976). *Goldberg's* call for a strict, harmless error standard will "guarantee, to the fullest degree reasonably possible, comprehensive disclosure of material covered by that Act." *Beasley, supra* at 632.

■ Failure on the part of the government to produce the Facer transcript in this case violates the strict harmless error standard. The government based its case on testimony of a group of witnesses, all of whose credibility had been placed in doubt. Plausible explanations have been offered for defendant Knowles alleged wrongful acts. We cannot say with any certainty that the jury would not have been influenced by disclosure of information that a government witness had perjured himself while testifying before a grand jury regarding the same subject matter.

■ In failing to produce the Facer transcript, the government violated not only its obligation under the Jencks Act, but also the rule laid down by this court in *United States v. Butler*, 567 F.2d 885, 890 (9th Cir. 1978), requiring the prosecution to produce certain evidence in its possession which is favorable to the defense. This court said in *Butler*: "The proper standard in negligent nondisclosure cases should call for a new trial whenever the nondisclosed evidence might reasonably have affected the jury's judgment on some material point, without necessarily requiring a supplementary finding that it also would have changed its

verdict." Under the *Butler* standard it is reversible error for the prosecution to fail to produce evidence in its possession whose omission would violate the strict harmless error doctrine. Applying that standard to this case, we note that the government did have knowledge of and access to the Facer transcript, and again that it is not for us to say the jury's judgment would not have been affected by evidence that a key prosecution witness had committed perjury.

■ The trial judge properly admitted evidence concerning Knowles's prior conviction for purposes of motive and intent. Fed.Rules of Ev. § 404(b).

REVERSED.