**UNITED STATES of America, Petitioner,**

v.

**Honorable Fred M. WINNER, United States Chief District Judge for the District of Colorado, Respondent,**

**Edward Alexander, Real Party in Interest.**

**No. 81-1961.**

United States Court of Appeals, Tenth Circuit.

Dec. 9, 1981.

Joseph F. Dolan, U.S. Atty., and Charles H. Torres, Asst. U.S. Atty., Denver, Colo., for petitioner.

James W. Nearen, Jr., Denver, Colo., for Edward Alexander.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The United States petitions for a writ of mandamus setting aside Judge Winner's order granting criminal defendant Edward Alexander a new trial. Since the government may not directly appeal the trial judge's order for a new trial, it seeks redress by way of a petition for a writ of mandamus.

Following a jury conviction for violation of 18 U.S.C. §§ 2, 1014, and 2314,[1] Alexander filed posttrial motions to arrest judgment and to grant judgment of acquittal. From the government's response to these motions, he learned that the government had failed to produce a grand jury transcript to which he was entitled under the Jencks Act, 18 U.S.C. § 3500(b). Alexander then filed an amended motion for new trial, alleging that the government violated the Jencks Act by not giving him the grand jury transcripts of all of Agent Thomas Rardin's testimony. The omitted testimony allegedly conflicted with other grand jury testimony of Rardin which defendant's counsel had received. The amended motion also argued that the government failed to prove substantive elements of the crime, the verdict was against the weight of the evidence, and the jury improperly disregarded the court's instructions. At a hearing on the motion, Alexander's counsel argued only the Jencks Act omission and the insufficiency of the evidence.

The trial judge granted the motion for new trial. He emphasized the government's absolute duty to turn over Jencks

1. The jury found Alexander guilty of transporting worthless cashier's checks in interstate commerce, and presenting or causing another to present them to a federally insured bank.

Act and *Brady* materials,[2] and stated that in the event of an omission, the court presumes the defendant was prejudiced. The government concedes the omission, but contends that it was harmless error and that the district judge failed to apply a harmless error test.

Defendant's counsel argued that courts should refrain from speculating that the defense could not have effectively utilized a statement the government should have produced, *see Clancy v. United States*, 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574 (1961), but he correctly acknowledged that courts apply the harmless error standard. *See Goldberg v. United States*, 425 U.S. 94, 111 n.21, 96 S.Ct. 1338, 1348 n.21, 47 L.Ed.2d 603 (1976); *Killian v. United States*, 368 U.S. 231, 243–44, 82 S.Ct. 302, 309–310, 7 L.Ed.2d 256 (1961); *Rosenberg v. United States*, 360 U.S. 367, 370–71, 79 S.Ct. 1231, 1233–1234, 3 L.Ed.2d 1304 (1959). In this Court defense counsel maintains that the trial judge implicitly found that the omission prejudiced Alexander and was not harmless error.

A fair reading of the judge's comments in their overall context indicates the judge did not grant a new trial because of a belief that any Jencks Act omission requires it. At the hearing on the motion for new trial, government counsel argued that nothing in the undisclosed transcript could have aided Alexander in his defense. The colloquy indicating the judge's view was as follows:

"MISS ROBERTS: But it was abundantly clear from a reading of those transcripts and from knowing the testimony in these cases that there was absolutely nothing in that transcript that could have been of any use to the defendant.

THE COURT: I don't know.

MISS ROBERTS: And even Mr. Nearen—

THE COURT: There's possible impeachment. I can see that argument in this case against this particular defendant viewed in the light most favorable to the government was the weakest case you had. You don't know what would have tipped the scale in the mind of some juror. I don't know.

This was a very, very, very close case. I agonized over the Motion for Judgment of Acquittal, and you don't know what some juror might have done had there been just minimal impeachment of Mr. Rardin.

MISS ROBERTS: Your Honor, there is nothing that Mr. Nearen has stated in his motion and his memorandum that shows any grounds for anything that could be considered impeachment as to his client. He even states in his memorandum on this point the inconsistency between the two statements is clearly exculpatory as regards the defendant Robohm, and the failure to provide the testimony undoubtedly affected his ability to cross-examine. He doesn't represent Mr. Robohm.

THE COURT: I know he doesn't. But, Miss Roberts, you've never represented a defendant in your life. You don't know how defense counsel can use that. It may not exculpate Mr. Alexander and it may just help Mr. Robohm, but it may in the mind of a juror weaken Mr. Rardin's testimony."

In his oral ruling granting the motion for a new trial, the judge stated:

"THE COURT: All right. The motion of the defendant Alexander for a new trial is granted. Fortunately, this does not mean a retrial of the long involved case involving Mr. Krown and Mr. Feeney.

18 U.S.C., Section 3500 says that the United States shall produce any state-

---

**2.** The Jencks Act, 18 U.S.C. § 3500(b), generally requires that after a government witness has testified, upon defendant's motion the government must disclose to the defendant any prior statement of a government witness relating to the subject matter of his or her testimony. These statements include a witness's testimony before a grand jury.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963), the Supreme Court held that suppression of evidence "favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

ment of the witness. The United States didn't do it. That's it. I don't think it was in bad faith. I think it was unfortunate.

The trouble with this whole case has been—one trouble—we've had different prosecutors on different defendants and now we have got somebody arguing the Motion for a New Trial who didn't try the case because the person who did try it is on vacation. But this case was a very, very, very nip and tuck case and I don't know what a jury might have done had there been any additional evidence."

In the formal order denying the government's motion for reconsideration, the judge stated:

"I ordered a new trial in this case. I did so because I think that the evidence in the case against this defendant is weak; that the slightest change in the testimony might change the result and that the interests of justice require a new trial. The government failed to comply with *Brady*, but that is not the only error on the part of the prosecution. I just don't think that the defendant received a fair trial taking into account all of the surrounding facts and circumstances, including the many problems which have developed in the companion cases in which James Feeney and Kevin Krown are charged. Evidence vital to defendants has been held back, and the government must accept the consequences of its conscious decision to keep facts secret."

Order of July 27, 1981.

Thus, the judge rejected the government's suggestion that the defense could not have used to its benefit the undisclosed transcript. Notwithstanding the trial judge's remarks that a showing of prejudice was unimportant, the judge's emphasis on the closeness of the case suggests he considered whether the defendant had been prejudiced by the omission. If the trial judge had thought that a Jencks Act omis-

sion, without regard to its prejudicial effect, required granting a new trial, he would have had no reason to comment on the weakness of the government's case and the possible use defendant's counsel could have made of the witness's inconsistent statements.[3] Therefore we conclude that the trial judge applied the harmless error standard. As the judge observed, while the omitted testimony may not have been directly exculpatory, the defendant could have used it to impeach the witness. Therefore, we cannot say that in this case, characterized as "very close," the omission was harmless error.

The Supreme Court has noted that we should be extraordinarily reluctant to grant mandamus in a criminal case when a new trial has been ordered:

"This is not to say that mandamus may never be used to review procedural orders in criminal cases. It has been invoked successfully where the action of the trial court totally deprived the Government of its right to initiate a prosecution, *Ex parte United States*, 287 U.S. 241 [53 S.Ct. 129, 77 L.Ed. 283] (1932), and where the court overreached its judicial power to deny the Government the rightful fruits of a valid conviction, *Ex parte United States*, 242 U.S. 27 [37 S.Ct. 72, 61 L.Ed. 129] (1916). *But this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal.*"

*Will v. United States*, 389 U.S. 90, 97–98, 88 S.Ct. 269, 274–275, 19 L.Ed.2d 305 (1967) (emphasis added). *Accord, Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 190–191, 66 L.Ed.2d 193, 197 (1980) ("A trial court's ordering a new trial rarely, if ever, will justify the issuance of a writ of mandamus.") To restrict the use of the writ to extraordinary circumstances, the Supreme Court has required that the

---

**3.** Denying a defendant's motion for judgment of acquittal does not preclude a trial court from weighing the evidence to determine prejudice. After denial of defendant's motion and return of a jury verdict, the trial court may consider again the sufficiency of the evidence if the defendant renews the motion for judgment of acquittal within seven days after the jury is discharged. Fed.R.Crim.P. 29(c).

party seeking issuance have no other means to attain the desired relief, and that the petitioner establish a "clear and indisputable" right to issuance of the writ. *Id.*

The government has failed to demonstrate a "clear and indisputable" right to issuance of the writ of mandamus. The petition is hereby denied.

BARRETT, Circuit Judge, dissenting:

The sole issue presented for our determination is whether, as a matter of law, the trial court erred in granting Alexander's motion for new trial based upon the court's determination that the Government's failure to produce the February 22, 1980, grand jury testimony of Agent Thomas Rardin was clear error in violation of the Jencks Act and that actual prejudice need not be demonstrated.

This ruling involves a question of such substantial importance to the administration of the criminal justice system that, in my view, it meets the test of "exceptional circumstances" justifying the issuance of the extraordinary writ of mandamus. *See United States v. Winner*, 641 F.2d 825 (10th Cir. 1981). That the trial court predicated the grant of the new trial motion on this ruling is evident by the court's statements made pursuant to the grant of the motion, to-wit: "18 U.S.C. Section 3500 says that the United States shall produce any statement of the witness. The United States didn't do it. That's it . . ." and "I do not think this is an area of law where a defendant has the burden of proving prejudice. I think prejudice is presumed" and "There are no exceptions to Jencks Act. I've never heard of an exception to the requirements of the Jencks Act. There it is, Congress said that is the law." This, then, was the basis for granting the new trial motion. Because I believe it to be clearly erroneous, I would grant the writ. Defendant Alexander certainly believed that this was the trial court's basis for granting him a new trial.

It is the precise basis stated in his amended motion for new trial.

The presiding judge did state, to be sure, that this was a weak case and even a little impeachment may have "tipped the scale in the mind of some juror," that it "was a very, very close case" which he had agonized over in relation to Alexander's motion for judgment of acquittal. I do not question the sincerity of the presiding judge. He did have a difficult struggle. Indeed, the record before us indicates that the trial court carefully considered Alexander's contentions raised in conjunction with his motion for judgment of acquittal at the conclusion of the Government's case-in-chief before denying that motion. Those contentions were, *inter alia*, that: the Government had failed to present substantial evidence proving Alexander's guilt beyond a reasonable doubt; the verdict is contrary to the weight of the evidence which creates nothing more than mere suspicion; and, the jury ignored the court's instructions. When the trial court denied Alexander's motion for judgment of acquittal, this constituted a considered judgment to submit the case to the jury. It is my view that the court then committed itself, as a matter of law, to abide the jury verdict, inasmuch as the motion was not renewed within seven days after the jury was discharged as provided by Fed.R.Crim.P. 29(c), 18 U.S.C. The motion was not renewed in the instant case. The jury returned the guilty verdict and was discharged on November 25, 1980. The motion for new trial was filed on December 29, 1980.[1]

Fed.R.Crim.P. 29(a), 18 U.S.C., provides that if the evidence is insufficient to sustain a conviction the court "shall" order an acquittal. This was not ordered. Thus, regardless of the difficult decision confronting the trial court on the motion presented in this case, the law is clear that when the court denied the motion for judgment of

---

1. This motion was part of a package filed December 29, 1980 entitled "Motion to Arrest Judgment, Motion for New Trial, Motion for Judgment of Acquittal and Memorandum in Support of Deponent's, Alexander, Motion to Arrest Judgment." On June 30, 1981, Alexander filed an "Amended Motion for New Trial, Memorandum in Support of Defendant Alexander's Motion to Arrest Judgment and Appendix 'A' and Amended Motion to Arrest Judgment."

acquittal, defendant Alexander was confronted with the dilemma of resting without presenting any defense evidence, thus risking conviction, or putting on evidence which might bolster the Government's case. By the same token, the trial judge was required to make a hard, considered decision on the motion for judgment of acquittal: if the judge was of the view that the totality of the Government's evidence did not meet the "beyond a reasonable doubt" burden, the motion should have been granted. When the motion was denied and the cause was submitted to the jury pursuant to the "beyond a reasonable doubt" test and the jury returned the verdict of guilty, that, as a matter of law, prevented the trial court from again considering the same matters advanced in support of the motion for judgment of acquittal, in light of the fact that the motion was not renewed within 7 days following the discharge of the jury. *See* Rule 29(c), *supra.*

It is established that when the trial court enters an order denying a motion for judgment of acquittal pursuant to Rule 29, the court has evaluated the evidence and has determined that there is sufficient evidence, viewing same in the light most favorable to the Government, from which a jury might reasonably find an accused guilty beyond a reasonable doubt. *United States v. Acree,* 466 F.2d 1114 (10th Cir. 1972), *cert. denied,* 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973); *Goff v. United States,* 446 F.2d 623 (10th Cir. 1971); *United States v. Harris,* 441 F.2d 1333 (10th Cir. 1971). When, as here, the defendant rests without putting on a defense, the court's denial of the motion for acquittal on the basis of the grounds advanced is conclusive and the court must let the jury decide the issue of the sufficiency of the evidence on the issue of guilty beyond a reasonable doubt. If convicted, and absent the filing of a renewed motion for judgment of acquittal within seven days of the discharge of the jury, the challenge to the sufficiency of the evidence is an issue exclusively reserved to the court of appeals. This challenge would be presented on a review of the denial of the motion for acquittal. Absent plain er-

ror an appellate court will not reverse a lower court's refusal to grant a defendant's motion for judgment of acquittal. On appeal, the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, must be scrutinized from the point of view most favorable to the government. *United States v. Davidson,* 597 F.2d 230 (10th Cir. 1979), *cert. denied,* 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *United States v. Walton,* 552 F.2d 1354 (10th Cir. 1977), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). In *Corbin v. United States,* 253 F.2d 646 (10th Cir. 1958), we observed:

> The jury passes upon the credibility of the witnesses and determines the fact of reasonable doubt. We are confined to the question of law as to whether there is substantial evidence, either direct or circumstantial, which, together with the reasonable inferences to be drawn therefrom, sustains the verdict. In doing this we must look at the evidence from the standpoint most favorable to the government.

253 F.2d at p. 649.

When the district court denied Alexander's motion for judgment of acquittal and submitted the case to the jury, it was, in my view, beyond the power of the trial court to later entertain *any* contentions advanced in the motion for new trial which were previously presented, considered and rejected by the trial court on the motion for judgment of acquittal. Thus the court could not, as intimated by the majority, reconsider these contentions on the motion for new trial: (1) that the Government failed to prove substantive elements of the crime, and (2) that the verdict was against the weight of the evidence. This, then, reduced the new trial contentions which could be considered by the court to two: (1) that the jury improperly disregarded the court's instructions and (2) that it was prejudicial error for the Government to fail to produce a grand jury transcript pursuant to requirements of the Jencks Act, 18 U.S.C. § 3500(b). The first issue was not argued or discussed and thus was apparently abandoned.

It is my opinion that when the trial court denied Alexander's motion for judgment of acquittal at the close of the Government's case-in-chief and because the motion was not renewed by Alexander within seven days following the discharge of the jury, the trial court was foreclosed from further considering the sufficiency of the evidence issue on the motion for new trial. I submit that if the "slightest change in the testimony might change the result" there could not have existed sufficient evidence to support a finding of guilt "beyond a reasonable doubt" when the Alexander motion for judgment of acquittal was denied.

The court of appeals can review the sufficiency of the evidence issue only as of the time that a Rule 29 motion was made. *United States v. Lopez,* 576 F.2d 840 (10th Cir. 1978); *United States v. Henderson,* 524 F.2d 489 (5th Cir. 1975).

Thus, when the amended motion for new trial was before the trial court pursuant to Fed.R.Crim.P. 33, 18 U.S.C.,[2] Alexander's counsel concentrated almost exclusively on the contention that Alexander was prejudiced by the failure of the Government to supply him with a copy of the February 22, 1980, grand jury transcript of testimony of Agent Rardin. This became the "wedge" to argue claimed insufficiency of the evidence.

The only issue the trial court could properly consider on the motion for new trial was the claimed Jencks Act violation involving the Rardin grand jury testimony. In my opinion, the trial court erred in granting the new trial based on its Jencks Act ruling:

*First,* the court erred in ruling that Alexander was not required to show prejudice arising from the Government's failure to produce the Rardin grand jury testimony. The harmless error doctrine has been applied when the Government failed to produce Jencks Act material. *Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); *Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). We recognize that, "the harmless error doctrine must be strictly applied in Jencks Act cases." *Goldberg v. United States,* 425 U.S. 94, 96, 96 S.Ct. 1338, 1341, 47 L.Ed.2d 603 (1967).

The rationale behind *Killian* and *Rosenberg* is that when the defendant has access to the same material contained in the unproduced document from other sources, "it would offend common sense and the fair administration of justice to order a new trial." 360 U.S. at p. 371, 79 S.Ct. at p. 1234.

In *Rosenberg, supra,* the defendant sought a new trial based on alleged failure of the Government to produce a letter wherein a Government witness stated that her memory of the events was faulty. Even though this was impeaching evidence, the Court held that the failure to produce the letter was harmless error inasmuch as the witness had admitted that her memory was faulty at trial and she had been subjected to thorough cross-examination.

In *Killian, supra,* the defendant contended that only he and his counsel could determine the uses that might have been made of the unproduced documents; thus, it would be impossible for the trial court to find that the failure to produce the documents was nonprejudicial or harmless error. This was the predicate for his motion for new trial. The Court held that if the defendant had been supplied with the same evidence as that contained in the unproduced documents from other sources the district court could properly find harmless error in the failure to produce.

*Rosenberg* and *Killian* stand for the proposition that failure to produce Jencks Act material is not an automatic or *per se* ground for a new trial. The harmless error doctrine applies. Thus, it is axiomatic that a showing of prejudice is required before a new trial is granted.

Courts of appeal have recognized that a failure to comply with the Jencks Act does

2. Rule 33 provides, *inter alia*:
   The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made . . . .

not, *per se*, require a new trial. *United States v. Knowles*, 594 F.2d 753 (9th Cir. 1979); *United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *Krilich v. United States*, 502 F.2d 680 (7th Cir. 1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 673 (1975).

In *United States v. Pope*, 574 F.2d 320 (6th Cir. 1978), *cert. denied*, 436 U.S. 929, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978), the Court aptly addressed the issue of when sanctions should be imposed for failure to comply with the Jencks Act. The Court there reviewed the legislative history of the Jencks Act and found that, as evidenced by the statutory language, Congress intended the sanctions to be mandatory only when the Government *elects* not to produce requested documents. That is, if the nonproduction is the result of inadvertence on the part of the Government, rather than a conscious choice not to produce the documents, then sanctions need not be imposed. The Court observed that in the *Rosenberg, Goldberg* and *Campbell* opinions, "the Supreme Court acted not upon a determination of whether it was error for the trial court to have failed to exclude all of the testimony of the witness, but instead whether the failure to furnish the statement itself caused any actual prejudice to the defense in the context of all the circumstances of the trial." 574 F.2d at 336.

*Second*, the entire transcript of the Agent Thomas Rardin grand jury testimony made part of this record demonstrates, I believe, that there was no inconsistency in Agent Rardin's grand jury testimony that was supplied to Alexander and his testimony before the grand jury on February 22, 1980, which the Government failed to produce, and which became the subject of the court's Jencks Act ruling. I believe that even under the "weakness" theory of the Government's case, such does not constitute impeachment insofar as defendant Alexander is concerned. The alleged inconsistency in the testimony dealt with Rardin's version of those persons who divided up the money. There were two specific sums of money testified to by Rardin that were divided between different participants. *See* the excerpts from Alexander's amended motion for a new trial dated June 30, 1981.

If we assume that Rardin was testifying on both occasions as to one sum of money (which I do not agree to be the case), still the only discrepancy between his identification of the participants involved was as to one other individual, but not Alexander. On both occasions Agent Rardin testified that Alexander participated in the division of some money. Thus, the impeachment aspect could only relate to misidentification of *one* other participant, but not Alexander. That, I submit, is not worthy of consideration in relation to a new trial motion. A motion for new trial based on newly discovered evidence must support the proposition, among other things, that the evidence is more than impeaching and would probably produce an acquittal. *United States v. Mucci*, 630 F.2d 737 (10th Cir. 1980); *United States v. Weninger*, 624 F.2d 163 (10th Cir. 1980), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States v. Plum*, 558 F.2d 568 (10th Cir. 1977); *United States v. Maestas*, 523 F.2d 316 (10th Cir. 1975).

## APPENDIX

TESTIMONY OF THOMAS J. RARDIN— February 22, 1980:

A In the investigation concerning the bank that succeeded the Aeiola Bank and Trust, pardon me, that is the European Credit Bank Corporation which was the Aeiola, A-e-i-o-l-a, Bank and Trust, a Mr. Earl Meairs at the request of Kay Robohm traveled to New York City where he received Aeiola Bank and Trust cashier's checks in the amount of $250-thousand and $135-thousand and paid $57-thousand for these checks in one-hundred dollar bills to Mr. Feeney.

That money was split between Mr. Feeney, Mr. Krown, Mr. Alexander. Those checks were then transported back to Denver, Colorado.

[Att. E to Motion for Judgment of Acquittal, Exhibit 2, p. 15].

TESTIMONY OF THOMAS J. RARDIN—
March 18, 1980:

A   The $250-thousand check, we believe, is still sitting in escrow.   Mr. Meairs has been told that the $57-thousand was divided up in various amounts, and that these amounts went to a Mr. Krown, Mr. Alexander, and Mr. Feeney.

Mr. Alexander and Mr. Feeney and Mr. Robohm also received some of that money. Those three individuals being the agents who put Mr. Meairs in touch with Mr. Krown and the Aeiola Bank and Trust, and Mr. Meairs as of this time is out $20-thousand to Mr. Robohm and the $57-thousand that he gave to Mr. Feeney for a total of $77-thousand.

[Att. E to Motion for Judgment of Acquittal, Exhibit 3, p. 20].