UNITED STATES of America, Plaintiff-Appellee,

v.

Michael T. CONNERS, Larry James Rieger, Defendants-Appellants.

Nos. 86–3115, 86–3131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1987.

Decided Aug. 24, 1987.

Peter O. Mueller, Seattle, Wash., for plaintiff-appellee.

Irwin H. Schwartz and Anthony Savage, Seattle, Wash., for defendants-appellants.

Before FARRIS, ALARCON and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Defendants Michael Conners and Larry Rieger appeal from the judgment of conviction for conspiracy and the transportation into the United States from Canada of more than $10,000 in United States currency, without filing a report, in violation of 18 U.S.C. § 371 (1982) and 31 U.S.C. §§ 5316 (1982 & Supp. III 1985) and 5322(a) (Supp. III 1985). Conners also appeals from the

judgment of conviction for making a false statement to a customs officer in violation of 18 U.S.C. § 1001 (1982). Their appeals have been consolidated.

Connors seeks reversal on several grounds.

One. The trial court erred in admitting the deposition of Kim Wagorn because he was denied the right to inspect her grand jury testimony before she was cross-examined.

Two. The dismissal of the material witness complaint against Kim Wagorn denied him the right to due process because she became unavailable as a witness at trial.

Three. The denial of Connor's motion for a severance permitted the jury to consider evidence of Rieger's cocaine involvement which was "inadmissible against him."

Four. The court erred in concluding that the overt acts were in furtherance of the conspiracy.

Rieger and Conners both claim that the evidence of Rieger's cocaine involvement was not admissible because motive and intent were not at issue.

## FACTUAL BACKGROUND

On February 9, 1986, at 12:40 a.m., Conners, Rieger, and Kim Wagorn, entered the United States at the Blaine Port of Entry, in the state of Washington, in a pickup truck driven by Rieger. When questioned by a primary inspector, Rieger stated that he was a Canadian citizen. He told the inspector that he and his girlfriend were taking Conners to the Seattle-Tacoma International Airport for an early morning flight to Florida. Rieger also stated that he was the owner of the pickup truck. In fact, the truck had been borrowed from an acquaintance. Conners identified himself as a United States citizen, and stated he was returning home to Florida after a one-day visit with Rieger. He informed the inspector he had nothing to declare except an inexpensive piece of jade jewelry.

The three were referred to secondary inspection where they were separated and given customs declaration Form 6059B to complete. Conners and Wagorn checked the "no" alternate response on the form to the question, "I am/we are carrying currency or monetary instruments over $10,000 U.S. or foreign equivalent." Rieger refused to complete the form or answer further questions.

The pickup truck was searched while Rieger, Conners and Wagorn were detained in the customs building. Customs inspectors discovered eight bundles of money secreted in a hollow place inside the door panel on the driver's side of the truck. The currency was left in place. The persons detained were not informed of the search. Instead, the customs officers decided to release them under clandestine surveillance. They were then allowed to enter the United States. Rieger drove the truck to a gas station. He got out of the truck and was observed examining closely the inside panel of the driver's door. Wagorn testified in her deposition that Rieger unscrewed something on the inside of the driver's door on the way to the airport.

When the trio reached the airport, the truck was parked in a stall in the garage. The occupants of the truck noticed they were being followed by a white car. It was a surveillance vehicle driven by a customs officer. Rieger dropped off Conners near the elevators in the garage. Rieger then drove the truck to the terminal where he circled the arrival and departure areas, hesitating outside the United Airlines pickup area each time.

Meanwhile, Conners proceeded toward the United Airlines counter but did not pick up his tickets or check in for his 6:35 a.m. United Airlines flight on which he held a reservation. Instead, he entered a restroom and then walked out of the airport. He was picked up by Rieger. Wagorn testified that when Conners reentered the truck he said, "Let's go for coffee and get a room for tonight." They drove to a nearby parking lot. Rieger and Conners observed the same white car they had seen at the airport garage, went over to the agent's car to find out why they were being followed.

Conners, Rieger, and Wagorn were arrested. The car was searched. The armrest had been removed, and the screws holding the door panel were scattered on the floor. The screws had been in place at the time of the initial search. The officers discovered more than $81,000 in United States currency behind the door panel. The money had been moved since the earlier search to a different position behind the door panel and was hidden from view by a flap of material. Cash in the amount of $878 was found on Conners' person. Conners' pocket also contained three pieces of paper. One bore Rieger's address in Vancouver, British Columbia. Another contained various flight times and fares to Denver and Tampa. Conners had reservations on these flights. Another note contained columns of monetary totals with names and dates. For example, this note paper reflected that a person named "Lass" had paid $43,000 on 2–8 and that "Rick" had paid $38,210 on 2–5.

The evidence showed that on January 23, 1986, Rieger, using the name Tom McCormick, and a false address and telephone number, wired $10,000 in United States funds to Conners in Florida.

On February 5, 1986, Conners left Florida and flew to Phoenix, Arizona. Conners placed a call from his Phoenix hotel on February 6, 1986 to a telephone number listed in the name Richard Robinson in the same city. Rieger called the same number on February 5, 1986. Handwritten references to "Rick" and the same Phoenix telephone number were found in Rieger's apartment.

Rieger's apartment in Vancouver, British Columbia, was searched by the Royal Canadian Mounted Police after his arrest. The search disclosed evidence of cocaine trafficking including bottles of cocaine cutting material, scales, a heat sealing device, plastic baggies, disposable baby bottle liners, a mirror, razor blades containing a trace of white powder, and a cane or walking stick, containing a hidden glass tube which held a quantity of cocaine.

## DISCUSSION

### A. *Admissibility of the Deposition of the Absent Witness*

On February 10, 1986, the government filed a motion for an order that a deposition be scheduled for Wagorn on February 14, 1986. The magistrate ordered that the deposition be scheduled for February 13, 1986 at 11:00 a.m., and urged the parties to take the deposition at an earlier date, if possible, "so that we can get her on her way if she is not going to be charged." Following this hearing all counsel agreed to conduct the deposition at 4:00 p.m. on February 12, 1986.

Wagorn testified before the grand jury on February 12, 1986. Later that day after Wagorn's grand jury appearance counsel met in the United States Marshal's office shortly after 4:00 p.m. to conduct the deposition. They were unable to do so at that time because the deposition reporter did not appear. The deposition was conducted on February 13, 1986 at 3:50 p.m.

Prior to the taking of testimony, Rieger's attorney made the following statement:

MR. SAVAGE: All right. Also, because the deposition is being taken so early in the case, we do not have Jencks Act materials that ordinarily we would have been provided with prior to the deposition or immediately afterward, and I want to note that so that in case subsequent production of those materials produces items of which I'm unaware and which I could have or would have cross-examined on, I can make objections to the trial court at the time the government proposes to play this back.

Thereafter, Conner's attorney stated as follows:

MR. ALEXANDER: I'll join Mr. Savage in that objection to the deposition being taken without Jencks material.

Assistant United States Attorney Peter Mueller replied as follows:

MR. MUELLER: I want to note for the record that the only Jencks material that is or will be in the government's possession with respect to this witness would be—she appeared yesterday at the

Grand Jury and gave testimony. The transcript, of course, has not yet been prepared and the reporter is not available. Beyond that there are no other written or recorded statements of the witness in the government's possession which are verbatim or substantially verbatim. With these matters on record is everyone else ready to proceed with the questioning of the witness?

Counsel for each defendant answered that they were ready to proceed. After her direct examination, each defense counsel stated they had no questions.

Following the taking of the deposition, all counsel appeared before the magistrate for a hearing concerning the necessity to continue to detain Wagorn. Government counsel suggested that rather than dismiss the complaint "it would be appropriate to ... [release] her with the need that since she is a witness she may need to return at some future time in connection with this case."

The magistrate stated he was prepared to dismiss the material witness complaint unless defense counsel objected because "they need her for trial." Government counsel stated that he did not "want to be in the position of saying that the government has made her unavailable by moving to dismiss the complaint."

Rieger's attorney then stated: "I have absolutely no objection to the matter being dismissed." Conners' attorney also stated he had no objection. Following this colloquy, the government moved to dismiss the complaint. The complaint was dismissed and Wagorn was advised that she was free to return to her home.

The parties stipulated that Wagorn was unavailable as a witness at the time of trial. Conners' defense counsel objected to the use of the deposition in lieu of Wagorn's testimony on the ground that he was not furnished her grand jury testimony prior to the taking of the depositon. Rieger's attorney joined in the objection. In overruling the objection, the district court noted that the grand jury transcript was not available at the time the deposition was taken. The judge sustained defense

objections to certain portions of the deposition and granted the defendants' request that a part of Wagorn's grand jury testimony selected by them be read to the jury.

■ A district court's decision not to preclude witness testimony for failure to produce a prior statement of the witness is reviewed for abuse of discretion. *United States v. Echeverry*, 759 F.2d 1451, 1456 (9th Cir.1985); *United States v. Sterling*, 742 F.2d 521, 524 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

■ Conners contends that the district court violated Fed.R.Crim.P. 15 in permitting the jury to hear Wagorn's deposition testimony. Rule 15(d) provides in pertinent part:

The government shall make available to the defendant or the defendant's counsel for examination and use at the taking of the deposition any statement of the witness being deposed which is in the possession of the government and to which the defendant would be entitled at the trial.

Conners' reliance on Rule 15(d) is misplaced. Rule 15(d) is inapplicable to the "discovery or inspection of recorded proceedings of a grand jury" in the absence of a request to the court for a disclosure order. Fed.R.Crim.P. Rules 6(e), 26.2(a), & 16(a)(3).

Disclosure of the transcript of grand jury testimony may be obtained by defense counsel under Rule 6(e)(3)(C)(i) "when so directed by the court preliminarily to or in connection with a judicial proceeding...." No motion was made by defense counsel for an order to disclose under Rule 6(e)(3)(C)(i).

Rule 26.2(a) provides as follows:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the wintess, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their pos-

session and that relates to the subject matter concerning which the witness has testified.

Rule 26.2(a) places in the criminal rules the substance of the Jencks Act 18 U.S.C. § 3500. Fed.R.Crim.P. 26.2 advisory committee's note.

We have stated previously in connection with the Jencks Act materials that

> the defendant must plainly tender to the Court the question of producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry. If he fails to do so he may not assert, on appeal, that failure to order production or to undertake further inquiry was error.

*Ogden v. United States*, 303 F.2d 724, 733 (9th Cir.1962) (footnote omitted). *See also United States v. Lyman*, 592 F.2d 496, 498–99 (9th Cir.1978), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979) (Jencks Act issue abandoned where defense counsel failed to pursue and obtain a decision on question); *accord National Dairy Prods. Corp. v. United States*, 384 F.2d 457, 462 (8th Cir.1967), *cert. denied*, 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968). Conners' counsel failed to seek a court order for the production of the grand jury transcript under Rule 26.2(a).

Conners' reliance on *United States v. Knowles*, 594 F.2d 753 (9th Cir.1979) and *United States v. Merlino*, 595 F.2d 1016 (5th Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980) is misplaced. In *Knowles* defense counsel made a timely request for Jencks Act material. 594 F.2d at 755. In *Merlino*, the government attempted to excuse its failure to produce a grand jury transcript when demanded by defense counsel on the ground that the proceedings had not been transcribed. 595 F.2d at 1018. The court held that this argument was "nothing short of ridiculous." *Id.* at 1019. As noted above, no request was made in the present case for a court order requiring disclosure prior to the termination of the deposition.

■ Fed.R.Crim.P. 15(d) is limited to the production of any statement of the witness to be deposed "which is in the possession of the government." Conners has failed to demonstrate that the grand jury transcript was in the possession of the government at the time of the deposition. Government counsel advised defense counsel prior to the commencement of the deposition that the transcript of the previous day's grand jury proceedings had not been prepared and that the reporter was not available. Defense counsel did not request a postponement of the deposition pending preparation of the transcript, nor did they request that Wagorn be detained in the United States until the transcript became available so that they could request that the deposition be resumed for cross-examination in light of her grand jury testimony. Instead, they agreed that the deposition be conducted after it was disclosed that the grand jury transcript was not yet in the possession of the government and raised no objection to the dismissal of the material witness complaint. Conners argues that the government could have produced a tape recording of the grand jury proceeding or the stenographer's notes before the deposition was taken. No showing has been made that the grand jury proceedings were tape recorded. We note also that government counsel has represented in his brief before this court that grand jury proceedings in the Western District of Washington are not tape recorded.

**B.** *Effect of the Dismissal of the Material Witness Complaint on Conners' Constitutional Rights*

Conners asserts that the government violated his fifth amendment right to due process and his sixth amendment right to compulsory process for obtaining favorable witnesses by placing Wagorn, a Canadian citizen, beyond the reach of a trial subpoena. We disagree.

■ The government advised the district court that it would not seek dismissal of the material witness complaint because it did not wish to be in the position of making unavailable a witness needed by the defense. Conners' attorney, however, advised the court that he had no objection to dismissal of the complaint. Under these

circumstances, Conners expressly waived the right to claim his right to call her as a witness at his trial with full knowledge that she was free to return to Canada. Moreover, no showing was made before the district court that Wagorn possessed material or favorable evidence. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (to establish a denial of due process, the defendant must show how the testimony of the deported witness would have been favorable and material).

### C. *Propriety of the Admission of Evidence of Rieger's Cocaine Involvement*

Conners and Rieger argue that evidence of Rieger's cocaine involvement was inadmissible because it was not relevant to prove motive or intent. They contend that this evidence was inadmissible under Fed. R.Evid. 403 and 404(b). Rule 404(b) provides as follows:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conforming therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence admissible under Rule 404(b)

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

■ The admission of evidence of other crimes pursuant to Fed.R.Evid. 404(b) is reviewed for abuse of discretion. *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987); *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982). The government must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case, and must demonstrate that, on balance, its pro-

bative value is not substantially outweighed by the danger of unfair prejudice to the defendant. *Mehrmanesh*, 689 F.2d at 830. A court's balancing of the probative value of the evidence against its prejudicial harm under Rule 403 is also reviewed for an abuse of discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1984).

■ The district court did not abuse its discretion in admitting evidence of Rieger's cocaine trafficking. The defendants filed a joint trial brief prior to trial in which they alleged that one of the issues for the jury to decide was whether the government could prove which, if either of them, hid the money in the door to avoid reporting its transportation.

Evidence of Rieger's cocaine activities was relevant to show his motive for concealing the money and his failure to file a report. The evidence was also relevant to prove that Rieger and Conners conspired to violate the reporting requirement. Proof that Rieger and Conner acted together prior to February 3, 1986 was also relevant to show their association and as circumstantial evidence that they acted in concert and planned criminal activities. *United States v. Normandeau*, 800 F.2d 953, 956–57 (9th Cir.1986).

The district court carefully balanced the prejudicial effect of this evidence against its probative value. It conducted an extensive voir dire examination of the relevancy of this evidence outside the presence of the jury. The court excluded some of the evidence and twice gave appropriate limiting instructions to the jury. The district court did not abuse its discretion in admitting evidence of Rieger's cocaine trafficking.

Conners asserts that the district court erred in denying his motion for a severance on the ground that the jury was unable to follow the court's instructions that evidence of Rieger's cocaine activities must not be considered against Conners. We disagree.

The district court instructed the jury as follows:

The testimony ... [of the Canadian officers], the exhibits identified by them

and the [stipulated testimony of] ... the chemist ... insofar as they tend to prove defendant Rieger was involved in cocaine dealing, were admitted in evidence ... against defendant Rieger only, and are not to be considered by you with respect to the guilt or innocence of defendant Conners.... They are admitted for a very limited purpose. Even with respect to defendant Rieger, this evidence may not be considered by you to prove that he committed the offense charged in the indictment, but only to prove Mr. Rieger's state of mind, that is, that he had a motive to conceal the currency found in the truck and to fail to report its transportation into the United States.

A defendant may move for severance under Fed.R.Crim.P. 14, which provides that "[i]f it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together, the court may ... grant a severance of defendants...."

 The district court has wide discretion in ruling on a severance motion. *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Burgess*, 791 F.2d 676, 678 (9th Cir.1986); *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). "The ruling of the trial judge will rarely be disturbed on appeal." *Escalante*, 637 F.2d at 1201. The party seeking reversal of a decision denying severance has the burden of proving "clear," "manifest," or "undue" prejudice from the joint trial, that violates one of his substantive rights, so that the prejudice is of "such magnitude that the defendant was denied a fair trial." *Id.* The court in *Escalante* listed the substantive rights that might be violated causing prejudice of the magnitude required. *Id.* The only one relevant to the issue raised by Conners is a failure properly to instruct the jury on the admissibility of evidence as to each defendant. The court in this case gave an extensive limiting instruction. Conners has not shown that any of his substantive rights were violated such that *Escalante* prejudice occurred.

Further, to obtain a reversal, a party must show that " 'joinder was so prejudicial that it outweighed the dominant concern of judicial economy.' " *United States v. Douglass*, 780 F.2d 1472, 1478 (9th Cir. 1986) (quoting *United States v. Monks*, 774 F.2d 945, 948 (9th Cir.1985)). Conners has not shown that the trial court abused its discretion in denying severance.

D. *Admissibility of Evidence of the Overt Acts*

Conners contends that alleged overt acts 1 through 8 were not committed in "furtherance of the conspiracy," and as a matter of law, should not have been presented to the jury.[1] Conners claims that the evidence was useful only to establish a prior association of the defendants or as "similar act" evidence pursuant to Fed.R.Evid. 404(b) and therefore required careful limiting instructions. Since no limiting instructions were given regarding these acts, Conners argues that the jury did not know how to consider them. Conners argues that reversal is required as a matter of law.

---

1. The indictment contains the following allegations regarding overt acts one to eight:
 1. On or about January 23, 1986, in Vancouver, British Columbia, LARRY JAMES RIEGER did cause a sum of money to be wired to MICHAEL T. CONNERS.
 2. On or about January 23, 1986, in the State of Florida, MICHAEL T. CONNERS did receive a sum of money.
 3. On or about February 5, 1986, MICHAEL T. CONNERS flew from Tampa, Florida to Phoenix, Arizona.
 4. On or about February 5, 1986, in Vancouver, British Columbia, LARRY JAMES RIEGER caused a sum of Canadian currency to be converted to United States currency.
 5. On or about February 5, 1986, LARRY JAMES RIEGER traveled from Vancouver, British Columbia to King County, Washington.
 6. On or about February 5, 1986, in King County, Washington, LARRY JAMES RIEGER occupied a motel room.
 7. On or about February 5, 1986, in King County, Washington, LARRY JAMES RIEGER made a telephone call.
 8. On or about February 5, 1986, in Phoenix, Arizona, MICHAEL T. CONNERS rented a hotel room.

Nineteen acts were alleged. In a special verdict, the jury found that overt acts 9 to 19 were committed in furtherance of the conspiracy. The jury also found that overt acts 1 to 8 were not committed in furtherance of the conspiracy. Conners has failed to demonstrate how he was prejudiced by the submission of overt acts 1 to 8 in light of the jury's favorable determination. He contends for the first time on appeal that the jury should have been given limiting instructions. None were requested in the trial court. The failure to give a limiting instruction was not error.

AFFIRMED.