17 F.3d 397
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Fred Covarrubias LOPEZ, Defendant-Appellant.
 No. 92-50677.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1993.
Decided Feb. 17, 1994.
 
 Before: HUG, SCHROEDER, and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The issues in this case are whether evidence concerning two prior drug deals that were not charged in the Indictment was properly admitted, whether the Government improperly vouched for the credibility of a witness, and whether certain jury instructions omitted elements of the crimes and created an impermissible presumption about the defendant's knowledge. We affirm Fred Covarrubias Lopez's convictions for conspiracy to distribute heroin in violation of 21 U.S.C. Sec. 846, and aiding and abetting possession with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2(a).
 
 I.
 
 3
 On redirect examination of informant Oswaldo Garcia, the Government elicited testimony about two prior narcotics transactions between informant Garcia and appellant Lopez. Lopez objects to the admission of Garcia's testimony about the prior transactions. He objects specifically to the Government's failure to make a Rule 404(b) motion prior to trial and its failure to demonstrate compliance with the requirements of Rule 404(b).
 
 
 4
 We review the district court's admission of evidence for abuse of discretion. United States v. Conners, 825 F.2d 1384, 1390 (9th Cir.1987). A district court's ruling that particular questions are within the proper scope of cross-examination because the questions are reasonably related to the subject matter of direct examination is also reviewed for abuse of discretion. United States v. Panza, 612 F.2d 432, 437 (9th Cir.1979), cert. denied, 447 U.S. 925 (1980).
 
 
 5
 The district court correctly dismissed the Rule 404(b) notice argument because the defense had been supplied with all of the discovery in the case and nothing further existed to be turned over to the defense.
 
 
 6
 The testimony about the prior narcotics transactions was admissible because the defendant "opened the door." See United States v. Hegwood, 977 F.2d 492, 497 (9th Cir.1992), cert. denied, 113 S.Ct. 2348 (1993); United States v. Bailleaux, 685 F.2d 1105, 1110 (9th Cir.1982). The defense clearly suggested that Garcia did not believe that Lopez could or would provide narcotics to him. The defense characterized Lopez as "just playing around," and attempted to create the impression that Lopez and Galvan were not serious about selling drugs.
 
 
 7
 Cross-examination that creates a false impression opens the door to evidence necessary to remove unfair prejudice to the Government. See United States v. Wales, 977 F.2d 1323, 1327 (9th Cir.1992). The district court properly admitted Garcia's testimony.
 
 II.
 
 8
 Before Lopez testified, the defense moved in limine to prevent the Government from cross-examining Lopez about any drug sales that occurred before July 19, 1991. The district court denied the motion after the Government argued that the prior drug business was relevant. During cross-examination of Lopez, the Government asked several questions about the two drug sales that had occurred in May, as described by informant Garcia during his redirect testimony.
 
 
 9
 Lopez contends that the cross-examination was an attack on his credibility by the use of extrinsic evidence of misconduct in violation of Rules 608(b) and 404(a). However, Lopez had opened the door by raising inferences that Lopez was not a drug dealer and did not want to be involved in the drug deal charged in the indictment. Lopez testified on direct examination that he did not want to be involved in the drug deals, he was not serious about his negotiations with Garcia, and he did not have drugs to supply. This opened the door to questions about Lopez's recent drug sales to informant Garcia, which showed that Lopez had been serious in the past and had been able to supply drugs.
 
 
 10
 The district court did not abuse its discretion in allowing cross-examination of Lopez about prior drug sales. See United States v. Sanchez-Robles, 927 F.2d 1070, 1078 (9th Cir.1991). The testimony concerned matters "reasonably related to the issues the defendant put in dispute by his testimony on direct." United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989) (quoting United States v. Miranda-Uriarte, 649 F.2d 1345, 1353 (9th Cir.1981)).
 
 III.
 
 11
 Lopez contends that reversal is necessary because the Government vouched for the credibility of informant Garcia and rendered the trial unfair. Lopez claims that the vouching occurred when the prosecution elicited testimony from DEA Agent James Burns about Garcia's truthfulness.
 
 
 12
 At trial, Lopez objected to Burns's testimony on the ground of relevance, but did not object to "vouching." His failure to raise this objection specifically at trial means that we review for plain error. See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). Plain error exists and requires reversal if, "viewing the error in the context of the entire record, the impropriety seriously affects the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice." Id. (quoting United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991)).
 
 
 13
 Vouching occurs when the Government places its prestige behind a witness "through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." Necoechea, 986 F.2d at 1276. "[A] prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." Id. (emphasis added) (quoting Molina, 934 F.2d at 1444.)
 
 
 14
 The appellant's claim fails because no vouching occurred. The exchange objected to did not include any vouching by a prosecutor; it occurred on direct examination of Burns, and the prosecutor's question to Burns was in response to attacks on the credibility of Garcia and Burns. Eliciting such testimony from a DEA agent does not "put the Government's prestige" behind the witness's credibility in the same way that a prosecutor does when he tells the jury that a witness is "telling the truth." The doctrine of vouching is aimed primarily at representations made directly by the prosecutor, whom the defense does not have the opportunity to cross-examine. See Necoechea, 986 F.2d at 1277 (collecting recent 9th Circuit cases, involving direct statements by prosecutors to jurors about the honesty of witnesses, or testimony elicited by prosecutors about truthful testimony requirements of plea agreements). In this case, the defense had full opportunity to cross-examine the DEA agent. No plain error occurred.
 
 IV.
 
 15
 Lopez argues that the instruction on aiding and abetting misstated the elements of the crime. The Government contends that the instruction should be reviewed only for plain error because the defense did not "specify his objection" at trial. At trial, defense counsel submitted a proposed jury instruction on aiding and abetting. When the court rejected that instruction, defense counsel objected on the ground that the court's instruction did not "articulate the different elements that are needed to prove an aid[ing] and abetting charge. Most of the instruction simply quotes the language of the statute." An objection must "distinctly" state the grounds of the objection. United States v. Armstrong, 909 F.2d 1238, 1243 (9th Cir.), cert. denied, 498 U.S. 870 (1990). The defense's objection did not alert the judge to the specific problem with the instruction. Thus, we review for plain error. If an element of the crime was omitted from the instruction, then plain error occurred. See Yates v. Evatt, 111 S.Ct. 1884, 1894 (1991); United States v. Gaudin, 997 F.2d 1267, 1273 (9th Cir.), reh'g granted, 5 F.3d 374 (9th Cir. Sept. 16, 1993); Martinez v. Borg, 937 F.2d 422, 424-25 (9th Cir.1991).
 
 
 16
 Lopez argues that the jury was permitted to convict him without first finding that someone else was guilty of possession with intent to distribute one kilogram or more of heroin as charged in Count Two. See United States v. Mann, 811 F.2d 495, 497 (9th Cir.1987) (proof that someone committed underlying crime is element of aiding and abetting).
 
 
 17
 Count One of the Indictment charged all five defendants with conspiracy to possess with intent to distribute heroin. Count Two charged four of the defendants with possession with intent to distribute, and charged Lopez only with aiding and abetting the commission of that crime. Lopez notes that Galvan was not on trial before that jury, that Figueroa was acquitted, and that the jury was hung as to Alvarez. He argues that it is not clear that the jury concluded that all essential elements of Count Two were proved against a principal. However, the jury could have concluded that Galvan committed all of the elements of the crime.
 
 
 18
 Lopez relies on Mann, in which the court reversed a conviction for aiding and abetting because the jury was not instructed to determine whether the underlying offense was committed. The instruction omitted the element of intent from its description of the underlying offense. However, in Mann, the jury was never instructed on the elements of the underlying crime because the principal was not tried with the defendants who were charged with aiding and abetting.
 
 
 19
 The instructions regarding aiding and abetting in Count Two followed the instructions concerning the possession with intent to distribute violation also charged in Count Two. The instructions for the underlying offense clearly stated the elements of that offense. The requirement that in order to find a defendant guilty of aiding and abetting, the jury must find that the underlying offense occurred, was implicit in the instructions. The emphasis on the "commission of a crime" was enough to alert jurors that they must find that each element of the crime, as explained earlier in the Count Two instructions, was committed. No plain error occurred.
 
 
 20
 Lopez also argues that the instruction did not require the jury to find that he had willfully associated himself with the criminal venture and that he had acted with the specific intent to make the criminal venture succeed. See United States v. Disla, 805 F.2d 1340, 1352 (9th Cir.1986) (defendant must have participated in the criminal venture and intentionally assisted the venture's illegal purpose).
 
 The instruction stated, in part:
 
 21
 [E]very person who willfully participates in the commission of a crime may be found to be guilty of that offense.
 
 
 22
 Participation is willful if done voluntarily and intentionally, and with the specific intent to do something which the law forbids, or with the specific intent to fail to do something the law requires to be done. That is to say, with the purpose either to disobey or to disregard the law.
 
 
 23
 This instruction was sound, as it clearly required intent.
 
 V.
 
 24
 Lopez argues that the instruction stating that "persons are presumed to know what the law forbids" was error because it "instructed the jury to presume an intent from an act." He likens it to the instruction found to be flawed in Sandstrom v. Montana, 442 U.S. 510, 524 (1979), because the jury could have interpreted the instruction as a burden-shifting presumption. An instruction that creates a mandatory presumption and tends to shift the burden of proof to the defendant is unconstitutional. Sandstrom, 442 U.S. at 524.
 
 
 25
 Because Lopez did not object to the instruction at trial, we review for plain error. Lopez argues that the district court gave the instruction without prior notice to counsel. However, the day before closing arguments, the judge informed counsel that 15 Devitt and Blackmar instructions, identified by number and theme, would be given. This was one of the instructions identified. Counsel had adequate opportunity to investigate those instructions prior to closing argument.
 
 
 26
 The statement that Lopez objects to was part of an instruction concerning a defense. The instruction stated:
 
 
 27
 It is not necessary for the prosecution to prove that the defendant knew that a particular act or failure to act is a violation of law. Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids and what the law requires to be done.
 
 
 28
 However, evidence that the accused acted or failed to act because of ignorance of the law needs to be considered by you the jury in determining whether or not the accused acted or failed to act with specific intent as charged.
 
 
 29
 This is different from the instruction given in Sandstrom, which stated that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513 (emphasis added). A presumption regarding intent is different from a presumption concerning knowledge of the law: intent is an element of the crime; knowledge of the law is not.
 
 
 30
 The instruction given effectively distinguishes specific intent from general intent. The presumption that a person knows the law merely means that all the intent that is required is an intent to do the act; if the act is unlawful, the person is subject to punishment. However, if the crime requires specific intent, then more is required.
 
 
 31
 Lopez argues that the presumption could have led the jury to conclude that Lopez knew that by giving the informant Galvan's beeper number during the November 14, 1991, conversation, he would assist Galvan and the informant in transacting the heroin sale. In other words, the jury could presume that Lopez knew the law of aiding and abetting, which provides that every one who willfully participates in the commission of a crime may be found guilty of that offense. Thus, the jury could have concluded that Lopez knew that he was aiding and abetting Galvan and, therefore, that Lopez had the intent necessary to commit the crime.
 
 
 32
 However, the jury was properly instructed on the element of intent in the aiding and abetting instruction, and the knowledge of the law instruction did not conflict or interfere with that.
 
 
 33
 Lopez also contends that knowledge of the law was relevant to the determination of whether Lopez had withdrawn from the conspiracy. Although Lopez objected, the court instructed the jury on the defense of withdrawal. Due to the erroneous presumption, Lopez argues, the jury may have concluded that the appellant did not withdraw from the conspiracy because the law of withdrawal required that he contact law enforcement and inform the co-conspirators of his withdrawal, and because Lopez did not prove that he did not know that the law required notification. In other words, the jury could have concluded that because Lopez knew the law, and did not do what the law required, he intended to continue in the conspiracy.
 
 
 34
 Lopez's argument does not accurately represent the withdrawal instruction given. The jury was not instructed that withdrawal requires notification of law enforcement; only that "intentionally alerting law enforcement" was one of the factors that the jury could consider in deciding whether Lopez had "taken a step to disavow or defeat the conspiracy." The instruction stated:
 
 
 35
 Now it is a defense to the charge of conspiracy that a defendant withdrew from the conspiracy before the commission of any overt act alleged in the indictment.
 
 
 36
 In order to withdraw from the conspiracy a defendant must take some definite, decisive and affirmative action to disavow himself from the conspiracy, or to defeat the goal or purpose of the conspiracy.
 
 
 37
 Merely stopping activities or cooperation, or merely being inactive for a period of time is not sufficient to constitute the defense of withdrawal.
 
 
 38
 In deciding if a defendant took a step to disavow or defeat the conspiracy, you may consider several factors, including whether the defendant intentionally alerted law enforcement to the conspiracy; whether the defendant told others in the conspiracy that his participation had ended; whether the defendant took steps to correct prior assistance to the group, and whether the defendant attempted to remedy any past act or attempted to prevent any further progress of the conspiracy.
 
 
 39
 RT 34-35, 7/10/92 (emphasis added).
 
 
 40
 The presumption regarding knowledge of the law did not affect the jury's consideration of the withdrawal defense. No plain error occurred.
 
 
 41
 The conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3