**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**David Dominic NECOECHEA,
Defendant–Appellant.**

**No. 92–10275.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 17, 1992.

Decided Feb. 18, 1993.

As Amended on Denial of Rehearing
April 15, 1993.

ality, because that issue was removed from the jury's consideration.

William G. Walker, Hirsh, Davis, Walker & Piccarreta, Tucson, AZ, for defendant-appellant.

Jesse Figueroa, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: GOODWIN, O'SCANNLAIN, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

David Dominic Necoechea appeals his conviction for conspiracy to possess mari-

juana with the intent to distribute in violation of 21 U.S.C. §§ 846 & 841(a)(1). Necoechea argues that the prosecution improperly vouched for its witnesses and knowingly presented false testimony, that he was denied effective assistance of counsel, that there was insufficient evidence to support his conviction, and that there was cumulative error. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

## I

Agent Richard Salazar, acting undercover, posed as a large-scale marijuana dealer looking for buyers. He planned a 120 pound transaction with Lupita Gibson, John Blomquist, Charles Jackson, and Manny Romero, though his primary contact was Gibson. After several discussions, a transaction was finally planned at a particular house. Everyone met at the house, after which Salazar left to go get the marijuana. While Salazar was gone, Gibson heard Jackson say that he was going to get his "moneyman."[1] Jackson returned with Necoechea. Gibson saw Necoechea at the door of the residence with a cooler, and heard Necoechea ask Jackson if he should bring the cooler into the house. This appears to be the only contact Gibson had with Necoechea.

At Salazar's request, Gibson and Jackson met him at a parking lot to inspect the marijuana. Salazar noticed that Gibson "looked like she knew what she was doing" when she inspected the marijuana. A short time later, Salazar came to the house, without the marijuana, to inspect the money. Jackson showed Salazar into the house, and led him to a room, but made him wait in the hall. Jackson went into the room, and came out with a cooler filled with cash, which Salazar said "looked good." Salazar then told Jackson that he would call to bring the marijuana to the house, and shortly thereafter a police team arrived. Jackson, Romero, and Necoechea were arrested in the house, and Gibson, who had left, was later pulled over by police when she returned to the house. Necoechea was

found, with the cooler full of cash, in the room to which Jackson had led Salazar.

Gibson entered into a plea agreement and testified that she saw Necoechea outside of the house with a cooler. Necoechea was convicted, and now appeals.

## II

Necoechea first argues that the prosecutor repeatedly vouched for the credibility of Salazar and Gibson. Since Necoechea failed to raise this objection at trial, we review for plain error. *United States v. Molina*, 934 F.2d 1440, 1444 (9th Cir. 1991); Fed.R.Crim.P. 52(b). We reverse only if, viewing the error in the context of the entire record, the impropriety "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice." *Id.* at 1446 (internal quotations omitted).

## A

"As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *Id.* at 1444. Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony. *Id.* at 1445; *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980). "Vouching is especially problematic in cases where the credibility of the witnesses is crucial, and in several cases applying the more lenient harmless error standard of review, [courts] have held that such prosecutorial vouching requires reversal." *Molina*, 934 F.2d at 1445. At the same time, we have recognized that prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying. *Id.; see also United States v. Prantil*, 764 F.2d 548, 555 (9th Cir.1985).

---

1. On a prior occasion, Jackson had also referred to a "partner" who could provide money.

We have recently decided a number of vouching cases, which we believe will be helpful to review and put in context.

In *United States v. Shaw*, 829 F.2d 714, 716–18 (9th Cir.1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988), the prosecutor told the jury in opening statement that the defendant's accomplice and an important government witness had agreed to testify and that "we ... have agreed that as long as he is truthful we will present his truthful cooperation to the local prosecutor." *Id.* at 717. The court instructed the jury that the witness was the beneficiary of a plea bargain and that the jury should examine his testimony with greater caution than that of ordinary witnesses. Even though the prosecutor's words imply that the prosecution had some method of determining whether the witness's testimony was truthful, and communicated a clearer message coming at the outset of trial before credibility had been challenged, we concluded that the vouching was harmless error. *Id.* at 717–18.

In *United States v. Wallace*, 848 F.2d 1464, 1473–74 (9th Cir.1988), the government elicited on direct examination that a witness had entered into a plea agreement which required her to testify truthfully, submitted in closing that the witness told the truth, and commented in rebuttal that the witness "didn't say that because that would not have been the truth ... [S]he could have gilded the lily, she could have really buried Janice Wallace .... but she didn't do that, she told the truth ... .[S]he could have given a lot more details ... But she didn't." *Id.* at 1474 n. 16. Defense counsel repeatedly argued that the government's key witness was lying. The trial judge instructed that the witness's testimony should be examined with greater caution as she was immunized and an accomplice, but gave no other curative instructions. We declined to decide whether the improper vouching was plain error, because the record was incomplete. *Id.* at 1474.

In *United States v. Lew*, 875 F.2d 219, 223–24 (9th Cir.1989), the prosecution brought out on the direct examination of two witnesses that their plea agreements required each to testify truthfully. We recognized that it was improper to allow the prosecution to elicit testimony on direct about the truthfulness requirement in a plea agreement. However, the vouching did not rise to the level of plain error because there was substantial independent evidence against the defendant, and because the judge instructed the jury to consider the extent to which the testimony of the witnesses may have been influenced by the government's promises and to look for corroborating circumstances before giving full credibility to those witnesses. *Id.* at 223–24.

In *United States v. Simtob*, 901 F.2d 799, 805 (9th Cir.1990), the prosecutor offered in front of the jury to immunize a witness for possible false statements to government officials. He then repeatedly exhorted the witness to tell the truth, and suggested during an exchange with the witness that he did not think the witness was lying. In response to defense counsel's objection, the court agreed that the prosecutor's remarks were "inappropriate" and said, "the jury will disregard." *Id.* at 806. The court also later instructed, "that the prosecutor cannot vouch for the truthfulness of a witness." *Id.* Because the case was close, we reversed applying harmless error analysis. *Id.*

In *United States v. Monroe*, 943 F.2d 1007, 1013–14 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992), the government introduced the truthful testimony requirement of the witness's plea agreement on direct. We held that this was not vouching as it was offered in response to defense counsel's attack on the witness's credibility in his opening statement. *Id.* at 1014.

In *United States v. Smith*, 962 F.2d 923, 933–34 (9th Cir.1992), the prosecutor assured the jury in closing argument that his job was to turn over favorable evidence to the defense and to lead them to the truth, and that "[i]f I did anything wrong in this trial I wouldn't be here. The court wouldn't allow that to happen." Defense counsel had attacked a witness's credibility,

and the prosecutor told the jury the witness could not just say anything he wanted to because he would be prosecuted for perjury. The witness's testimony was crucial, the prosecutor's comments as a whole were not invited, and the prosecutor placed the prestige of both law enforcement and the court behind the witness's testimony. Accordingly, we reversed for plain error. *Id.* at 934–36.

Most recently, in *United States v. Kerr,* 981 F.2d 1050 (9th Cir.1992), the Assistant United States Attorney in closing argument referred to interviews he had with four witnesses and asked whether they were hoodwinking him and the court, and also said "I think ..." one witness was "very candid," and another was "candid" and "honest." The trial court gave a general instruction which did not mention the specific statements of the prosecutor and was not given immediately after the vouching occurred. We examined the closeness of the case, and thought the testimony of the four witnesses for whom the government vouched was crucial to the case and to the prosecutor's argument. We reversed for plain error. *Id.* at 1054.

■ These cases indicate that we have no bright-line rule about when vouching will result in reversal. Rather, we consider a number of factors including: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall. When reviewing for plain error, we then balance the seriousness of the vouching against the strength of the curative instruction and closeness of the case.

**B**

Necoechea argues that the prosecutor impermissibly vouched by bringing up the truthfulness provision of Gibson's plea agreement, by mentioning facts outside the record, and by expressing his personal opinion of credibility.

■ First, Necoechea points to the prosecutor's opening statement that, "in exchange for a reduced exposure on this charge and a recommendation of probation from my office, [Gibson] has agreed to cooperate with the government, and to testify truthfully." This is vouching. Although the particular statement, "to testify truthfully," is nothing more than what the plea agreement says, it does mildly imply, as do all statements regarding truthfulness provisions, that the government can guarantee Gibson's truthfulness. It does not, however, connote that the government will be monitoring the witness's truthspeaking. *Cf. Shaw,* 829 F.2d at 717 (prosecutor stated that "as long as" the witness testified truthfully, the prosecutor would help the witness obtain a lighter sentence, thereby implying somewhat more directly that the government knew what the truth was and could monitor the witness's truthfulness.) The statement in this case does not refer to any facts outside the record, or express any personal opinion. Although it was not invited, Gibson's credibility would almost certainly be challenged in any event.[2]

■ Necoechea next argues that the prosecutor improperly vouched by eliciting testimony regarding the truthfulness provision on direct examination by asking Gibson if it were part of her agreement that she "testif[y] truthfully and cooperat[e]," to which she responded yes. This is not vouching. The prosecutor's question does not imply a guaranty of Gibson's truthful-

**2.** As we said in *Shaw,* "[w]hen the prosecution refers, as it did here, to the requirement of truthfulness before the issue of bias is drawn, it runs the risk that its reference will be interpreted as an attempt to establish truthfulness and suggest verifiability. We agree, however, with the government that what was said is more important than when it was said, at least in a case such as this one where an attack on the witness' credibility was almost certain to be forthcoming." 829 F.2d at 717.

ness, refer to extra-record facts, or reflect a personal opinion. Nor was it inopportune since Necoechea challenged Gibson's credibility during opening statement. *See Monroe*, 943 F.2d at 1013–14 (reference to a truthfulness provision may be made on direct examination if the witness's credibility is attacked during opening statement).

■ Necoechea also points to two statements made in argument. First, the prosecutor in closing stated:

> Then [defense counsel] says that Lupita didn't testify against the others. Well, I'm going to ask you to disregard that completely. The reason why she testified, or didn't testify, is really nothing—nothing that's part of this trial. *I should tell you, ladies and gentlemen, that the cases against those others were resolved, so she didn't have to testify.*

[Emphasis added.]

This statement is vouching. The prosecutor's argument bolsters Gibson's credibility by explaining why she did not testify against her other codefendants, and refers to facts not in the record since there was no evidence concerning the resolution of the codefendants' cases.[3] The statement also implies that the prosecutor had personal knowledge of why Gibson did not need to testify. It may further insinuate that the other conspirators pled guilty or were convicted, suggesting that Necoechea was in the company of convicted drug dealers.

■ In addition, the prosecutor stated: "Why, ladies and gentlemen, if [Gibson's] lying, isn't she doing a better job of it? I submit to you, ladies and gentlemen, that she's not lying. I submit to you that she's telling the truth." Necoechea argues that this statement is a personal assurance of Gibson's veracity, citing *United States v. Roberts*, 618 F.2d 530, 533–34 (9th Cir. 1980). *Roberts* is much different. There the prosecutor argued in closing that a detective was sitting in the audience monitoring a government witness's testimony for its truthfulness. *Id.* This detective, however, never testified and there was no other evidence in the record concerning the detective. The prosecutor also argued that, "If [the witness] lied ... the plea agreement is called off." *Id.*

These "I submit" statements do not constitute vouching. The prosecutor here argued that Gibson told the truth because, if she were lying, she would have done a better job. This is simply an inference from evidence in the record. It is not, as in *Roberts*, a reference to extra-record facts or a personal guarantee of Gibson's veracity. The prosecutor merely argued that Gibson was telling the truth, an argument the prosecutor had to make in order to convict Necoechea. These statements do not imply that the government is assuring Gibson's veracity, and do not reflect the prosecutor's personal beliefs. *Cf. Kerr*, 981 F.2d at 1053 ("I think he was very candid"; "I think he was honest.").

■ Necoechea finally argues that the prosecutor vouched for Salazar by referring to facts not in evidence during rebuttal. Necoechea complains about the following explanation of why Salazar did not search Necoechea's house: "[Necoechea's attorney] never asked Salazar why they didn't execute a search warrant. Do you think, ladies and gentlemen, the answer might have been, 'We didn't know where he lived'?" This argument, however, was a reasonable inference based on the evidence. During cross-examination, Salazar was

---

**3.** The government suggests that the prosecutor's unsupported argument was a response to Necoechea's ostensibly unsupported argument:

> [Gibson] doesn't testify against Blomquist, or Romero, or Jackson. Now, why is that? Well, they've got Blomquist, Jackson and Romero talking to Agent Salazar. They've got him under surveillance, and they've got him on tape. They don't need her testimony for something like that. She needs to say something about a person against whom there's no proof in order to save her own neck.

The government is mistaken. Gibson testified that this was the first case in which she testified, and therefore Necoechea's argument was nothing more than a permissible inference from the record; it was not an extra-record argument, nor was it an attack on the government's integrity. It is simply a permissible attack on Gibson's credibility which, standing alone, does not trigger the invited response rule. *Cf. United States v. Smith*, 962 F.2d 923, 934 (9th Cir.1992).

asked whether a particular house which agents had surveilled was Necoechea's house, and he responded, "I don't know if it was, or not." On re-cross-examination, Salazar was also asked whether any of the residences involved in the case were Necoechea's, and he responded, "Not that I know of." In fact, Salazar had not known of Necoechea until after the arrest and search of the house. There was no reason for Salazar to have searched Necoechea's house before arrest. Why Salazar did not search Necoechea's house after arrest bears little, if at all, on Necoechea's guilt. The prosecutor's statement, therefore, was grounded in the evidence.

## C

Even though we agree with Necoechea that there were two instances of vouching, we do not agree that they amount to plain error.

Necoechea would have us hold that no reference to a truthfulness provision in a plea agreement should be permitted and that any reference to truthfulness provisions is plain error. We decline to do so. Our cases have not so held, nor has any other circuit.[4]

■ While the trial court did not *sua sponte* give a curative instruction during opening statement or closing argument, it did instruct at the end of trial that the jury should weigh the testimony of "a coconspirator or accomplice who provides evidence for immunity from punishment or for personal advantage or vindication" with "greater care" than the testimony of an ordinary witness. Since the vouching during opening statement was mild, this general instruction was sufficient to cure the error. In this respect this case is more similar to *Shaw*, 829 F.2d at 718, where a similar general instruction cured relatively similar vouching, than to *Kerr*, where the prosecutor's statements were far more serious and a specific instruction immediately after the vouching had occurred might have neutralized the harm. *Kerr*, 981 F.2d at 1053–54. The plea agreement was eventually introduced, so the only consequence of the prosecutor's referring to it in opening statement was the advantage of anticipating the attack on Gibson's credibility. Indeed, the prosecutor himself acknowledged that Gibson was "no angel."

■ The vouching during closing argument is more problematic. Agent Salazar's testimony appeared to suggest that all other conspirators were on tape; one of Necoechea's most effective arguments, therefore, was that Gibson had a significant incentive to lie since her testimony was primarily valuable against Necoechea. However, the court gave a general instruction that the attorneys' arguments were not evidence in the case. Gibson's credibility was forcefully challenged at trial, so the prosecutor's improper remarks in closing argument, viewed in light of the court's instruction and the context of the trial, was short of a "miscarriage of justice."

Gibson was certainly an important witness against Necoechea. Hers was the

---

4. Indeed, most other circuits are not as concerned with whether truthfulness provisions are referred to before credibility has been challenged as our cases have been. *See United States v. Lord*, 907 F.2d 1028, 1029 (10th Cir. 1990) (recognizing that majority of circuits admit evidence of truthfulness provisions before credibility is challenged); *see also United States v. McNeill*, 728 F.2d 5, 14 (1st Cir.1984) (evidence of immunity agreement may be introduced on direct regardless of whether credibility will be attacked); *United States v. Oxman*, 740 F.2d 1298, 1303 (3d Cir.1984) (since government could reasonably anticipate impeachment of witness, not improper to disclose truthfulness provision on direct), *vacated on other grounds sub nom. United States v. Pflaummer*, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *Unit-* *ed States v. Henderson*, 717 F.2d 135, 137–38 (4th Cir.1983) (not an abuse of discretion to introduce terms of a plea bargain on direct examination), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984); *United States v. Edelman*, 873 F.2d 791, 795 (5th Cir.1989) (admission of plea agreement where witness promises to be truthful is not impermissible bolstering); *United States v. Townsend*, 796 F.2d 158, 162–63 (6th Cir.1986) (affirming introduction of entire plea agreement on direct, noting that eliciting during direct examination a plea agreement with a truthfulness provision does not constitute impermissible bolstering); *United States v. Mealy*, 851 F.2d 890, 898–900 (7th Cir. 1988) (plea agreements do not impermissibly bolster credibility); *United States v. Drews*, 877 F.2d 10, 12 (8th Cir.1989) (adopting *Townsend*).

strongest evidence that it was he who carried the cooler with the cash into the house. There was, however, significant circumstantial evidence connecting Necoechea with the conspiracy. Salazar testified that Jackson said he had a "partner" who could provide money, and Necoechea was found in the room with the cooler with the money.

In light of the fact that Gibson's testimony was impeached, the nature of the vouching did not appreciably put the integrity of either the prosecutor or the court behind her credibility, and an instruction commensurate with the degree of vouching was given, we cannot say that Gibson's testimony was so crucial or the case so close as to require reversal for plain error.

### III

 Necoechea next argues that the prosecutor presented false testimony to the jury. A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial. *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989), *cert. denied,* — U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *United States v. Polizzi*, 801 F.2d 1543, 1549–51 (9th Cir. 1986).

Necoechea claims that Gibson lied at trial when she testified that this was her first marijuana transaction. He also argues that the government knew that this was a lie because Gibson had told Agent Salazar that she had been "dealing for years" and because Salazar had noticed that Gibson "knew what she was doing" when she inspected the marijuana. Necoechea also points to an unsigned memorandum from an investigator which states a co-defendant said that Gibson had once said that she had "set up other deals involving drugs."

Even if Gibson lied,[5] Necoechea has not shown that the prosecutor knew the statements were perjurious. At most, the prosecutor presented contradictory testimony, and that is not improper. *Sherlock,* 962 F.2d at 1364.

### IV

 Necoechea argues that he was denied effective assistance of counsel since his attorney failed to object to the prosecutor's vouching. An ineffective assistance of counsel claim is more properly raised by collateral attack on a conviction. *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir.1992). However, this claim can be reviewed (1) if the record on appeal is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right. *Id.* Since the essence of Necoechea's argument is a failure to object, the record is sufficient in this case for review. *See United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991) (reviewing on direct appeal ineffective assistance of counsel claim for, in part, prosecutorial vouching).

 Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the "wide range" of permissible professional legal conduct. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Thus, Necoechea did not suffer from ineffective assistance of counsel.

### V

 Necoechea contends that there was insufficient evidence for his conviction. The standard of review for claims of insufficiency is whether, "reviewing the evi-

---

**5.** Gibson claims that she lied to Salazar about "dealing for years" in order to gain his confidence, so she did not contradict herself at trial. Salazar's observation that Gibson knew how to inspect marijuana does not necessarily imply that Gibson had dealt before; nor does the un-

signed memorandum stating that the "snitch" had said "she" had done drug deals before. The memorandum is double hearsay, does not explicitly mention Gibson, and acknowledges that the co-defendant was unwilling to meet with the investigator.

1282

dence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

Here, the primary evidence linking Necoechea to the conspiracy was Gibson's testimony. The uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face. *United States v. Lai*, 944 F.2d 1434, 1440 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). Gibson's testimony is not incredible or insubstantial in light of Necoechea's presence in the house, in the room where the cooler with the cash was found, and testimony that a "moneyman" would be present at the drug deal.

## VI

Finally, Necoechea argues that there was cumulative error requiring reversal. Although individual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal. *United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir.1988). In reviewing for cumulative error, the court must review all errors preserved for appeal and all plain errors. *United States v. Berry*, 627 F.2d 193, 200 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). Even if a particular error is cured by an instruction, the court should consider any "traces" which may remain. *Id.* at 201.

In addition to those already discussed, Necoechea complains of two other possible errors. First, he argues that during rebuttal, the prosecutor impermissibly drew on his own knowledge of fingerprint evidence when he argued: "Where is the testimony that you can take fingerprints from plastic? Where is the expert, ladies and gentlemen, to testify that the material was the kind of material that would in fact pick up prints."

This is not an impermissible argument for two reasons. A prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased to call attention to the defendant's own failure to testify. *United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991). The prosecutor's comments do not suggest that Necoechea should have testified; thus, under *Hill*, they are permissible. Second, the comments were in response to Necoechea's arguments about the failure to produce fingerprint evidence.

Necoechea also argues that the prosecutor dealt an impermissible "foul blow" by arguing that "when you look at [Necoechea], you're looking at a dope dealer. You're looking at a dope dealer." A prosecutor is allowed to deal a "hard blow" based on the evidence and all fair inferences therefrom, but courts may not permit "foul blows." *United States v. Prantil*, 764 F.2d 548, 555–56 (9th Cir.1985). Given the wide latitude accorded to final argument, distinguishing foul from hard blows is not an easy task. *Id.* Here, however, the task is not so difficult; this is a hard blow. The purpose of the trial was to prove that Necoechea was a drug dealer. This is not only a reasonable inference, it is the ultimate inference the jury had to make. Such a comment, though hard, is not foul when compared to other comments which we have found not to be error. *See, e.g., United States v. Makhlouta*, 790 F.2d 1400, 1403 (9th Cir.1986) (affirming district court which allowed prosecutor to argue "what kind of family man sells heroin that kids inject?").

Thus, we must consider whether the two instances of vouching cumulatively require reversal. Necoechea argues that once all errors are grouped, their cumulative impact must be reviewed under a harmless error standard, citing *Berry*. *Berry*, however, held that since the defendant charged "non-constitutional error," the court should affirm if the cumulative error was more probably than not harmless. *Berry*, 627 F.2d at 201. Unlike those in *Berry*, all of the errors Necoechea raises

are subject to plain error review. Therefore we review the cumulative impact of the possible plain errors for plain error. *Cf. United States v. Rivera,* 900 F.2d 1462, 1470 n. 6 (10th Cir.1990) (when aggregating errors, if *any* error is constitutional, then aggregate error should be reviewed under harmless beyond a reasonable doubt standard).

We acknowledge that a defendant is more likely to be prejudiced by error or misconduct when the government's case rests on uncorroborated accomplice testimony. *United States v. Hibler,* 463 F.2d 455, 462 (9th Cir.1972). Gibson's testimony in this case is corroborated only by testimony that a "money man" would be at the drug deal. Thus, our review should be critical.

Since both vouching errors affect the same issue—Gibson's credibility—the possible prejudice grows when both errors are viewed together. Nevertheless, there is no cumulative error. The vouching during opening statement was mild, and was adequately cured by the court's general instruction. There can be no "traces" of prejudice left over from that vouching, as Gibson's credibility was attacked and the plea agreement was used to impeach her. Likewise, the vouching that occurred during closing argument was effectively neutralized by the court's instruction that comments of counsel are not evidence. Accordingly, we conclude that neither instance of vouching was plain error considered separately, nor do both together rise to the level of plain error requiring reversal.

AFFIRMED.