56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Glenn Demone CARR, Defendant-Appellant.
 No. 94-30284.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided June 1, 1995.
 
 Before: BROWNING, REAVLEY,* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Glenn Carr appeals his conviction and sentence for possession of cocaine base ("crack") with intent to distribute. We affirm.
 
 
 3
 Carr challenges the sufficiency of the evidence. In reviewing such a claim we determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir. 1992).
 
 
 4
 The evidence supports the following events. Carr lived in Los Angeles. He and Lamont Geter visited Portland. They were arrested at a house during a drug bust. There had been numerous complaints about the house being a "crack house" by neighbors. The police began surveillance, and a confidential informant made several purchases of crack. A search warrant was obtained and numerous officers executed the warrant. The officers knocked loudly three times, shouting that they had a search warrant. They then pounded the door down. Carr and Geter were at a table and Carr quickly moved toward a hallway. On the table was a large block of crack and several smaller pieces of the size that would be sold for street use. The street value of the drugs was estimated at $15,000 to $20,000. A razor blade, baking soda (used to prepare cocaine base from powder), diet scales and other drug paraphernalia were found at the house.
 
 
 5
 The police found on Carr's person $520 in cash and a Western Union cash transfer receipt for $2500. The receipt was made out from "John Smith" to Camela Green, Carr's wife. Carr claimed he had won the money gambling. He also stated that he was unemployed. He said that he had been at the house for several hours. Judy Phillips, known by the police to be a resident of the house, was not at home at the time of the bust, but arrived some time later.
 
 
 6
 The defense offered testimony that Carr had been to a gambling club and had had a winning night. Carr's mother testified that he had a job and was in Portland to visit relatives. The defense offered no evidence explaining why Carr was at the house. Carr's counsel conceded in closing argument that the substance found was crack cocaine,[1] and that the house was a crack house.
 
 
 7
 We find the evidence sufficient to support the conviction. The case presented by the prosecution was not one of "mere presence," in light of evidence that Carr did not answer the door, was directly at or over the table where the drugs were found, moved away from the table when the door was knocked down, and had on his person a large amount of cash and a money transfer receipt for $2500 (though he said he was unemployed).
 
 
 8
 Carr complains of testimony by officer Kelley confirming that after the informant made a buy shortly before the bust "she didn't tell you she bought the crack cocaine from Eva Phillips or Judy Phillips." No objection was made to this testimony. Errors not raised in the district court are subject to the plain error standard of review, which "in most cases ... means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." United States v. Olano, 113 S. Ct. 1770, 1776-78 (1993). A court of appeals should correct a plain error if failing to do so would seriously affect the fairness, integrity or public reputation of judicial proceedings, or would amount to a miscarriage of justice. United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). We conclude that the prejudice if any from this "non-verbal hearsay" was far less than required to establish plain error. Kelly only testified that the informant did not indicate that the buy was from Judy or Eva Phillips. It is undisputed that Judy Phillips was not even at the house at the time of the bust, but returned later. Eva was at the house at the time of the bust, along with Carr and Geter. For all we can tell from this testimony the informant simply was not asked from whom she made the buy, and the buy could have been from Eva, Geter or Carr. Further, defense counsel turned this testimony to Carr's advantage, arguing persuasively in closing argument that if the informant had bought the drugs from Carr the prosecution would surely have put the informant on the stand.
 
 
 9
 Carr also complains of the following testimony by Kelley to which defense counsel did object:[2]
 
 
 10
 Q: And at least on that day he'd done about $3,000 in business; isn't that true?
 
 
 11
 A: That was the conclusion I drew, yes.
 
 
 12
 Carr seems first to suggest that this testimony was improper because it was "premised" on the testimony discussed above. We conclude, based on our review of the record, that the testimony was based on Kelly's personal observations that there was a large amount of crack in the house, that Carr was standing or sitting right next to it, and that the $3000 in cash and a money transfer receipt dated the same day were removed from Carr's person. The court was within its discretion in allowing Kelley to state the conclusion as "rationally based on the perception of the witness." FED. R. EVID. 701.
 
 
 13
 Carr next complains of the following testimony of another officer:
 
 
 14
 Q: Is it also your experience or is it your experience that crack houses are used by lots of people to deal crack not just the people who may rent or own a house?
 
 
 15
 A. In my experience I found a lot of renters and owners are users of the drug and they're allowing these other people to sell and provide them with free drugs to let them sell at a place.
 
 
 16
 There was no objection. We find no plain error because (1) the testimony was given in redirect after Carr's counsel "opened to door" by eliciting testimony from the same witness that the police had found no evidence indicating that Carr resided at the house or had been there before, (2) while the officer may not have been formally offered as an expert, he did testify that he had executed many warrants on crack houses, and Carr points to nothing in the record indicating that he was unfairly surprised by the testimony, and (3) other evidence of guilt was ample, if not overwhelming.
 
 
 17
 Carr next claims error resulting from a portion of the government's closing argument.[3] Again there was no objection, and we find no plain error. Carr cites authority that the prosecutor should not express a personal opinion as to guilt or innocence, or suggest that a defendant is guilty merely because he is being prosecuted or has been indicted.[4] Viewing the record as a whole, the prosecutor here was not trying to make such an argument. He was instead trying to argue the weakness of the defense theory that Carr was in town to visit relatives or gamble, by pointing out that there was no reason for Carr to be at the crack house, and that the drug business is a surreptitious one in which non-participants usually are not present for several hours. Such argument is permitted. "[W]e have recognized that prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying." Necoechea, 986 F.2d at 1276.
 
 
 18
 Carr finally raises arguments concerning his sentence. We address these arguments in a separate, published opinion.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 It appears that this concession was a strategic move to prevent the prosecution from admitting into evidence a prior conviction based on very similar facts. The strategy worked in that the district court refused to admit the prior conviction
 
 
 [2]
 The objection came after the answer and no basis for the objection was made, but we assume here that the objection was sufficient to preserve error
 
 
 [3]
 The prosecutor stated in rebuttal:
 You know, you don't ask people to come over and watch you do the drug business if they're not involved in it, they don't have some stake, some reason to be there. This is a business you do behind closed doors and the only reason we find them is when police knock that door down and get in there quick, and find them sitting at the table cutting the drugs up. Why would Mr. Geter do that? Why would they come together from Los Angeles? And there Mr. Carr is with Mr. Geter at the table.
 People do things, ladies and gentlemen, for a reason. And Mr. Carr did this for the reason all drug dealers do it. He did it for the money. And he was moving that money. And the police did what they did for a reason. Because the people of this community asked him [sic] to go find people dealing crack cocaine and they did it. And if you believe that evidence I would ask you to return a verdict and find Mr. Carr guilty.
 
 
 [4]
 E.g., United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir. 1989), cert. denied, 113 S. Ct 419 (1992)