**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Allen ELIAS, Defendant–Appellant.**

No. 00–30145.

D.C. No. CR–98–00070–BLW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001.

Decided Oct. 23, 2001.

Before WALLACE, HALL, and T.G. NELSON, Circuit Judges.

MEMORANDUM *

Because the facts of this case are recounted in the opinion filed contemporaneously, we do not repeat them here.

I. KNOWING ENDANGERMENT

The evidence at trial showed the following: Elias put cyanide in the tank sometime in the 1980s; he knew that one to two tons of sludge remained in the tank when he transported it years later; OSHA had informed Elias that his failure to have a cyanide antidote kit, his failure to continuously monitor for cyanide with appropriate equipment, his violations of closed entry permits, and his failure to properly train and equip his employees caused a "substantial probability of death or serious physical harm" on other occasions; nonetheless, Elias failed to provide any training or the safety equipment he knew he should provide; after Dominguez collapsed, Elias

denied any knowledge that cyanide might be in the tank; after Dominguez's injury, Elias persisted in endangering employees by having them acknowledge training that they never undertook and by instructing another man to bury the sludge that harmed Dominguez without the benefit of safety equipment. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Elias knowingly exposed his employees to hazardous waste that he knew with substantial certainty would cause death or serious bodily injury.[1]

II. THEORY OF DEFENSE INSTRUCTIONS

■ The district court did not err in refusing to give Elias's proposed instruction regarding assumption of risk because no evidence supported it. One cannot logically infer from the fact that at least two coworkers knew or suspected that the tank was dangerous that Dominguez knew that there was potentially deadly cyanide in the tank and that he nonetheless consented to entering it, particularly in view of his direct testimony to the contrary.

■ The empty container instruction was similarly unwarranted. A "container" is "any portable device in which a material is stored, transported, treated, disposed of, or otherwise handled."[2] In contrast, a "tank" is "a stationary device, designed to contain an accumulation of hazardous wastes which is constructed primarily of non-earthen materials ... which provide structural support."[3] The district court

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (explaining standard of review).

2. 40 C.F.R. § 260.10.

3. Id.

sensibly concluded that the fact that this 36 × 11 ft, 25,000–gallon tank had been moved did not necessarily mean the tank was portable and thus a "container." Contrary to Elias's assertion, the EPA's OSWER Directive 9441.19185 supports the district court's decision rather than undermines it. The OSWER directive only concluded that the "tanks" at issue there were "containers" because those tanks were tank *cars*.[4] Moreover, even if Elias's tank could be characterized as a "container," the instruction he sought would not have been warranted because there was no evidence that it was "empty" within the meaning of 40 C.F.R. § 261.7(b).

Finally, the district court did not err in failing to instruct the jury that 40 C.F.R. § 261.4(b)(7) exempts from RCRA regulations waste resulting from extraction and beneficiation of ores and minerals. By its terms, that exemption only applies to primary mineral production where the feedstock contains less than 50 percent scrap materials.[5] It does not apply to secondary production of mineral commodities like recovery from flue dust, which is what AEI did.

## III. PRIOR BAD ACTS EVIDENCE [6]

■ Contrary to Elias's contention, the OSHA inspector's testimony, as well as the testimony from several of Elias's employees, is relevant to offense elements. It tends to show that Elias had long ago been put on specific notice of the risks associated with confined spaces and the handling of cyanide. This, in turn, provides circum-

stantial evidence that Elias knew the tank was in fact dangerous. The evidence, in other words, was admissible to show intent, knowledge, or absence of mistake or accident.[7]

## IV. STATEMENTS BY THE EPA ENGINEER

■ During Elias's direct examination of EPA engineer Michael Silverman, the Government objected based on hearsay and lack of personal knowledge. The gist of the objection was that Silverman was simply repeating what Elias had told him during an inspection. The court sustained the objection:

> I'm not going to preclude any inquiry of the witness, but Rule 602 requires that as a condition to any witness' testimony, that a foundation be established of personal knowledge and unless such questions are phrased that way, I will sustain the objection as violative of Rule 602 and if the basis of knowledge relies upon hearsay, I will sustain the objection pursuant to Rule 801, 802. So, with that limitation, I'm not going to exclude the witness from testifying, but it needs to be clear that this was based upon observation and not based upon hearsay.

To this Elias's counsel replied, "I understand, Your Honor." Counsel did not object to the exclusion of the evidence and did not advance the argument that the information sought was not hearsay or was otherwise admissible. Under these circumstances, the Government is correct that this court reviews for plain error.[8]

---

**4.** OSWER Directive 9441.1985(41), Dec. 12, 1985, 1985 WL 286839 (OSWER).

**5.** 40 C.F.R. § 261.4(b)(7)(iii)(A).

**6.** Review of Elias's claim that evidence of prior bad acts was improperly admitted is complicated by the fact that, rather than drawing this court's attention to specific statements, Elias simply directs us to 171

pages in the transcript containing testimony from several different witnesses.

**7.** Fed.R.Evid. 404(b).

**8.** *See United States v. Sarno,* 73 F.3d 1470, 1490 (9th Cir.1995) (reviewing for plain error where defendant failed to object when court sustained an objection and struck testimony as irrelevant).

There is no such error here. Counsel gave no indication at the time that the exclusion of the testimony would "seriously affect the fairness, integrity or public reputation of judicial proceedings, or ... would amount to a miscarriage of justice."[9] Given the ample evidence that Elias knew that there was dangerous cyanide sludge in the tank, any error was not plain.

## V. EVIDENCE OF MATERIAL MISSTATEMENT

Viewing the evidence in the light most favorable to the prosecution, there is evidence from which a rational trier of fact could have found that Elias made a material misstatement to OSHA investigators by representing that he completed a confined space entry permit on August 27, 1996, when he did not in fact complete it until after that date.[10] The permit Elias signed states that it was "issued" on August 27, 1996, at 10:30 a.m. After Dominguez was injured, Elias told investigators that he had completed a permit that day, though he described it as "handwritten" and "not very formalized." Elias declined, however, to actually provide the permit to investigators on that day, or even on the next day. Most damaging, however, was a Kerr–McGee Corporation manager's testimony that early on the morning of August 28, Elias visited him, inquired about the requirements for confined space entries, and departed with Kerr–McGee's safety manual, which spelled out the requirements for a confined space entry permit. Although this evidence is certainly not overwhelming, it is legally sufficient.

## VI. SENTENCE

Under U.S.S.G. § 3D1.1, offense levels for multiple counts are consolidated into a single "combined offense level." In this case, that level was 36, yielding a sentencing range of 188–235 months. In turn, U.S.S.G. § 5G1.2, which governs "Sentencing on Multiple Counts of Conviction," provides that where, as here,

the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment [the combined offense level dictates], then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently .... [11]

The district court followed this guideline. Because the statutory maximum for each of the individual counts of conviction was less than the combined sentence, it imposed the statutory maximum, with the concurrent/consecutive nature of those sentences determined according to U.S.S.G. § 5G1.2(d). That Elias's material misstatement conviction, standing alone, would only have warranted a 12–18 month sentence is immaterial. Elias simply overlooks the fact that when offenses are grouped into a combined offense level, it is that level—and not the individual offense levels—that dictates his ultimate sentence.[12]

AFFIRMED in part, VACATED in part, and REMANDED.

---

**9.** *United States v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir.1993) (internal quotation marks and alteration omitted).

**10.** *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

**11.** U.S.S.G. 5G1.2(d).

**12.** *See* USSG §§ 3D1.1 and 3D1.4.