# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57055-6-II |
| Respondent, | |
| v. | |
| JOSEPH WILLIAM CASANO, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Joseph Casano threw a walking stick at William McGinnis, a community corrections officer. After arresting Casano, McGinnis found methamphetamine in Casano's backpack. The State charged Casano with possession of a controlled substance with intent to deliver and third degree assault.

At trial, defense counsel highlighted differences between the testimony of the State's witnesses and their police reports. Defense counsel argued in closing that "one reason to doubt" equated to reasonable doubt. 1 Verbatim Rep. of Proc. (VRP) at 399. In response, the prosecutor told jurors that having one doubt would not obligate them to acquit Casano, because beyond a reasonable doubt meant an abiding belief in the truth of the charge. The prosecutor also told jurors that whether or not things are written in a police report is not a basis for determining credibility. Defense counsel did not object to these statements.

The jury found Casano guilty of both charges. The judgment and sentence contained a boilerplate provision ordering Casano to pay community custody supervision fees.

Casano appeals. He argues that defense counsel rendered ineffective assistance by failing to object to the prosecutor's statements at closing about the burden of proof and about assessing witness credibility. Casano also argues that the trial court must strike the community custody supervision fees. We remand for the trial court to strike the supervision fees and otherwise affirm Casano's convictions and sentence.

FACTS

I. ARREST

McGinnis, a community corrections officer, and John Tulloch, a corrections specialist, were looking to serve an arrest warrant on Casano when they saw him in a business park. McGinnis yelled Casano's name and Casano ran away. When McGinnis and Tulloch caught up with Casano, Casano threw the walking stick he was holding at McGinnis. In response, McGinnis tased Casano. Casano fell and Tulloch handcuffed him. A search of Casano's backpack revealed multiple small baggies of methamphetamine, one larger baggie also containing methamphetamine, and cash. The State charged Casano with possession of a controlled substance with intent to deliver and third degree assault.

II. TRIAL

A.      Testimony about the Incident

At trial, McGinnis, Tulloch, and Casano all testified about the walking stick. McGinnis testified that Casano threw the walking stick at him and that the stick came so close to his head that he "had to dodge out of its way." 1 VRP at 109. On cross-examination, McGinnis acknowledged that while he wrote in his police report that Casano threw the stick at him, the report contained no details about the stick being thrown at his head or about having to avoid being hit by

it. Tulloch testified similarly. He said Casano threw the stick at McGinnis, but he acknowledged that while his police report contained that detail, it did not state that Casano threw the stick toward McGinnis's head or that McGinnis had to jump out of the way. And Casano testified that he threw the walking stick to the ground rather than at McGinnis.

McGinnis also testified about the search of Casano's backpack. He said the search revealed a scale. But McGinnis confirmed on cross-examination that his report did not mention finding a scale. Additionally, Tulloch and Brett Curtright, a different community corrections specialist who assisted with Casano's arrest, testified that they did not remember finding a scale.

Later, Tulloch testified about a postarrest conversation with Casano. Tulloch said that when he spoke with Casano about the contents of his backpack, Casano "told [him] he was a horrible drug dealer." 1 VRP at 148. On cross-examination, Tulloch said he did not use quotation marks when he wrote about Casano's statement, although he was "[p]retty sure that's what [Casano] said." 1 VRP at 190-91. Casano testified that he told Tulloch that he *would be* a horrible drug dealer, not that he *was* a horrible drug dealer.

Curtright testified that he also spoke with Casano after his arrest. He said he asked Casano whether he was selling narcotics, and Casano replied, "'I gotta do what I gotta do to eat.'" 1 VRP at 209.

B.      Jury Instructions and Closing Arguments

The jury instructions explained reasonable doubt as doubt "for which a reason exists and may arise from the evidence or lack of evidence." Clerk's Papers (CP) at 118. The instructions also stated, "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." *Id.*

3

The jury also received instructions on assessing witness credibility:

In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and *any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony*.

CP at 114 (emphasis added).

During closing argument, the prosecutor told jurors, "I'm going to highlight some [jury] instructions for you. Rely on what is contained in the instructions. If one of us misspeaks, the instructions that you are given is what controls." 1 VRP at 371.

Defense counsel also referenced the jury instructions. He told jurors, "The court's instructed you that a reasonable doubt is one for which a reason exists, right? So[,] if you have one reason to doubt a charge, you have an obligation to find [Casano] not guilty." 1 VRP at 399. Defense counsel pointed out that the State's witnesses testified inconsistently about whether Casano had a scale and highlighted differences between their testimony and their police reports.

In rebuttal, the prosecutor argued that defense counsel had misrepresented the State's burden of proof: "[Defense counsel] said if you have one doubt, you have to find the defendant not guilty. That is not the standard as it is contained in the instructions that you have. Beyond a reasonable doubt is an abiding belief in the truth of the charge." 1 VRP at 420.

The prosecutor also argued about the weight jurors should assign to discrepancies between the State witnesses' testimony and their police reports. The prosecutor recited the jury instruction for assessing credibility, listing the considerations, including "all the other evidence and then any other factor that you find helpful." 1 VRP at 424. But the prosecutor then said, "That is the basis

for which you are to determine the credibility, not whether or not things are written in a police report, which, again, are written so that they -- to help law enforcement recall what happened." *Id.* Defense counsel did not object to the prosecutor's statements about the burden of proof or the standard for assessing credibility.

C.      Verdict and Sentence

The jury found Casano guilty of possession of a controlled substance with intent to deliver and third degree assault. The trial court sentenced Casano to 20 months and 1 day for the possession with intent to deliver conviction and 17 months for the assault conviction, to be served concurrently. The judgment and sentence contained a boilerplate provision ordering Casano to "pay supervision fees as determined by" the Department of Corrections. CP at 170.

Casano appeals his convictions and sentence.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Casano argues that defense counsel's failure to object and request curative instructions during the State's closing argument denied him effective assistance of counsel. We disagree.

The federal and state constitutions guarantee the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017); U.S. CONST. amend. VI; CONST. art. I, § 22. To establish ineffective assistance of counsel, a defendant must show "'that counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" *State v. Carson*, 184 Wn.2d 207, 216, 357 P.3d 1064 (2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To prevail, the defendant must meet both the deficiency requirement and the prejudice requirement. *Estes*, 188 Wn.2d at 457-58.

Counsel's performance was deficient if it fell "'below an objective standard of reasonableness based on consideration of all the circumstances.'" *Id.* at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). To establish that counsel performed deficiently, the defendant must show that there were no "'legitimate strategic or tactical reasons supporting the challenged conduct.'" *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012) (quoting *McFarland*, 127 Wn.2d at 336). We strongly presume that counsel's representation was reasonable. *Estes*, 188 Wn.2d at 458.

Counsel's deficient performance prejudices the defense "if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.*

A.    <u>Failure to Object</u>

First, Casano contends that defense counsel should have objected because the State inaccurately described the burden of proof and because the State told the jurors that they should not evaluate the State witnesses' credibility based on discrepancies between their testimony and their police reports. We disagree.

To establish ineffective assistance of counsel based on counsel's failure to object, the defendant "must rebut the presumption that counsel's failure to object 'can be characterized as *legitimate* trial strategy or tactics.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (quoting *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)). Refraining from objecting even where the prosecutor's argument was improper in order to avoid emphasizing unhelpful testimony or argument is a legitimate trial tactic. *See id.* And a decision not to object

during closing argument is generally "within the wide range of permissible professional legal conduct," especially because lawyers "do not commonly object during closing argument 'absent egregious misstatements.'" *Id.* at 717 (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)).

    1.    <u>Prosecutor's statements on the State's burden of proof</u>

We give prosecutors significant latitude in closing argument, particularly when responding to defense counsel's arguments. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011); *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). A prosecutor does not make egregious misstatements by paraphrasing jury instructions. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009). For example, in *Anderson*, we held that a prosecutor's statement was proper where he said "that a 'reasonable doubt' is one for which a reason exists" and the jury instructions "reiterated this concept: 'A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence.'" *Id.*

Here, defense counsel did not perform deficiently by refraining from objecting during closing argument when the prosecutor spoke about the burden of proof. The prosecutor was responding to arguments defense counsel made in their closing arguments. Far from making egregious misstatements, the prosecutor paraphrased the jury instructions—much like the prosecutor in *Anderson*. In rebuttal, the prosecutor stated, "[Defense counsel] said if you have one doubt, you have to find the defendant not guilty. That is not the standard as it is contained in the instructions that you have. Beyond a reasonable doubt is an abiding belief in the truth of the charge." 1 VRP at 420. These statements accurately reiterated the jury instructions on the State's burden of proof. The jury instructions provided that the State had "the burden of proving each

element . . . beyond a *reasonable* doubt" and that a "*reasonable* doubt is one for which a reason exists." CP at 118 (emphasis added). The prosecutor was thus correct that having "one doubt" was not a sufficient basis for returning a verdict of not guilty. 1 VRP at 420. The instructions further provided that if, "after fully, fairly, and carefully considering all of the evidence or lack of evidence," the jurors had "an abiding belief in the truth of the charge," they would be "satisfied beyond a reasonable doubt." CP at 118. The prosecutor's statement was nearly identical. Defense counsel's decision to refrain from objecting was thus well within the range of permissible professional conduct.

Even if defense counsel had performed deficiently, there would have been no prejudice. We presume that jurors follow the trial court's instructions, *Emery*, 174 Wn.2d at 766, and Casano provides no argument rebutting that presumption. Moreover, at the beginning of closing argument, the prosecutor said, "If one of us misspeaks, the [jury] instructions that you are given is what controls." 1 VRP at 371. Any difference between the prosecutor's statement and the jury instructions was so insignificant that this precautionary comment would have prevented any prejudice by redirecting the jury to the language of the instructions. Because there is no reasonable probability that but for counsel's alleged deficient performance, the outcome of the proceedings would have been different, Casano's challenge fails.

2.      Prosecutor's statements on witness credibility

As stated above, refraining from objecting to an objectionable statement to avoid emphasizing the other party's argument is a legitimate trial tactic, and lawyers "do not commonly object during closing argument 'absent egregious misstatements.'" *Davis*, 152 Wn.2d at 717 (quoting *Necoechea*, 986 F.2d at 1281).

Here, to the extent that the prosecutor misstated the standard for evaluating witness credibility, that misstatement was not so egregious that defense counsel performed deficiently by failing to object. The prosecutor first listed the factors the jury instructions directed jurors to consider when assessing witness credibility, including "any other factor that [they found] helpful." 1 VRP at 424. This statement accurately relayed the instructions. *See* CP at 114. The prosecutor then said, "That is the basis for which you are to determine the credibility, not whether or not things are written in a police report, which, again, are written . . . to help law enforcement recall what happened." 1 VRP at 424.

Casano argues that, in making this statement, the prosecutor told the jurors that they could not use the police reports to asses witness credibility. But the prosecutor had just told jurors that they could consider any factor they found helpful, so it was reasonable to interpret this statement as an argument against assessing the officers' credibility *solely* based on the consistency of their testimony with their reports. Moreover, even if the jury had not interpreted the statement in this way, the prosecutor's reiteration that the jury could consider any factor helpful to determining credibility reduced the likelihood that the jury would have ignored the police reports entirely. It was reasonable to refrain from objecting under these circumstances, and even if this decision had constituted deficient performance, the difference between the prosecutor's statements and the jury instructions was insignificant, so the prosecutor's earlier emphasis on the fact that the written jury instructions control would have prevented any prejudice. *See* 1 VRP at 371. Because there is no reasonable probability that but for counsel's alleged deficient performance, the outcome of the proceedings would have been different, Casano's challenge fails.

B.       Failure to Request Curative Instructions

Casano further contends that defense counsel should have sought curative instructions to remedy the prosecutor's improper statements. We disagree.

To establish ineffective assistance of counsel based on "counsel's failure to request a particular jury instruction, the defendant must show [they were] entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

Here, Casano has not established that defense counsel gave ineffective assistance by refraining from requesting curative instructions. The prosecutor's statements about the burden of proof were proper, so Casano was not entitled to a curative instruction and defense counsel did not perform deficiently by failing to request it. And while the prosecutor's statement about using police reports to assess witness credibility was more problematic, defense counsel did not perform deficiently by declining to object and failing to request a curative instruction. We strongly presume that counsel's representation was reasonable, *Estes*, 188 Wn.2d at 458, and as stated above, Casano fails to rebut the presumption that counsel reasonably decided not to object in these circumstances where the instructions and the prosecutor's prior statement made it clear that the jury could consider anything that was helpful to them when assessing credibility.

There is no basis for us to find that defense counsel gave Casano ineffective assistance. We affirm Casano's convictions.

II. SUPERVISION FEES

Casano argues, and the State concedes, that the trial court must strike the provision in the judgment and sentence imposing community custody supervision fees because RCW 9.94A.703 does not authorize that provision. We agree.

While Casano's case was pending on appeal, the legislature removed the authorization for trial courts to impose community custody supervision fees. *See* LAWS OF 2022, ch. 29 § 8. The statutory amendment eliminating community custody supervision fees took effect on July 1, 2022. The statutory amendment applies here because Casano's case was still pending on review when the amendment became effective. *State v. Ellis*, No. 56984-1-II, slip op. at 13 (Wash. Ct. App. June 13, 2023).[1] We accept the State's concession and remand for the trial court to strike the provision imposing community custody supervision fees.

CONCLUSION

We remand for the trial court to strike the provision imposing community custody supervision fees from the judgment and sentence. We otherwise affirm Casano's convictions and sentence.

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2056984-1-II%20Published%20Opinion.pdf.

No. 57055-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Lee, J.

Che, J.